# HENRY MANSFIELD, Adm'r., etc.

## *v.*

## ANDREW HOAGLAND *et al.*

1. ASSIGNMENT—*assignee of an equity—when does not take it subject to the equities of third persons.* The assignee of an equity, for a valuable consideration, will be protected against the equities of third persons, of whose rights he had no notice.

2. DEFAULT—*in suits in chancery—effect of.* In a suit in chancery, where a party voluntarily submits to a default, he thereby admits the truthfulness of the allegations in the bill; and until the decree entered therein has been set aside, or opened, it stands in full force against him.

3. PARTIES—*in suits in chancery—real parties in interest only should be parties to the proceedings.* In chancery, the real parties in interest should be parties to the proceedings, and those whose rights cannot be affected by the final decision therein, will not be permitted to litigate rights in such suit, unconnected with the subject matter in controversy.

APPEAL from the Circuit Court of Peoria county; the Hon. MARION WILLIAMSON, Judge, presiding.

The facts in this case are stated in the opinion of the court.

Messrs. GOUDY & CHANDLER, for the appellant.

Mr. D. McCULLOCH, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that Joseph I. Moore, a resident of the State of New Jersey, died intestate, in the month of July, 1849. It also appears, that Joshua J. Moore, previous to his death, was indebted to him in the sum of $1,000, for which he had given his note in May, 1840. That subsequent to the death of Joseph I., his brother-in-law, Joseph C. Hoagland, brought suit on the note in the Circuit Court of the United States, in Illinois, in

his own name, to whom he claimed it had been endorsed by the payee in his lifetime.    On the 14th of July, 1854, he recovered a judgment on the note, and sued out an execution, and had it levied on the S. E. 6, 7 N. 4 E., and purchased it under the execution, on the 1st of September, 1856, at the sum of $800.    Subsequently an alias execution was issued, and levied upon the N. E. 7 and S. W. 8, 7 N. 4 E., and when sold by the marshal, Hoagland became the purchaser, at the sum of $1,256 60.

In January, 1859, John Elting applied to the Probate Court of Peoria county, and obtained letters of administration on the estate of Joseph I. Moore, deceased.    He thereupon filed a bill in chancery in the Peoria Circuit Court, against Joseph C. Hoagland, alleging that he obtained the note from Charles Suydam, another brother-in-law of Hoagland, at whose house Joseph had died, and in whose possession his papers were left; and that Hoagland wrongfully forged the assignment of the note to himself.    The bill recites the commencement of the suit, the recovery of the judgment, the suing out of the executions, the sales and purchase of the lands by Hoagland; and charges the redemption allowed by law, had expired under the first, but had not under the latter sale.    The bill further charges, that Joseph C. Hoagland had, for the purpose of covering up the transaction, fraudulently, and without consideration, assigned the certificates of purchase to Andrew Hoagland, a cousin, to hold in a secret trust for him.    The bill charges, that Joseph I. Moore left a number of brothers and sisters surviving him, and the children of others, deceased, as his heirs, who were entitled to a distribution of his property. The bill makes the two Hoaglands and Joshua J. Moore, defendants, and prays that the assignment may be set aside and canceled, and that the certificates of purchase may stand as a security for any debt Joshua J. Moore may owe complainant; and that the Hoaglands be enjoined from selling or transfering the lands, and for general relief.

A summons was issued and served on Joshua J. Moore, but the Hoaglands, being non-residents, were not served. The necessary publication of a notice of the pendency of the suit was made against them. At the March term, 1859, the defendants having failed to answer, the bill was taken as confessed, and a decree was rendered. It found that the Hoaglands had conspired to cheat and defraud the heirs of Joseph I. Moore; that Joseph C. had received of Joshua J. Moore $240, as his share of the note and judgment. The decree found the balance due to be $1,948 72, of which Joshua J. Moore was entitled to $487 18, leaving $1,461 54 to be divided among the other heirs. It found the Hoaglands to be trustees for the heirs, and that the judgment, certificates of purchase, etc., be and stand as a security; and that as to the Hoaglands, the sale be set aside, and the certificates be delivered up to Joshua J. Moore, when he should pay the money due to the administrator; and that the Hoaglands convey to him when he should present to them a certificate from the administrator, that he had paid the money; and on a default, the master was authorized and required to convey the lands to Joshua J. Moore. They refused to convey, and the master executed the conveyance under the decree.

At the June term, 1859, Andrew Hoagland applied to the court to set aside the decree, and permit him to file his answer. And on a hearing of the motion, at the next January term, the court entered an order opening and setting aside the former decree, as to him, and granting him leave to file an answer, which he then did.

The answer denies that the assignment of the certificates was colorable or fraudulent, but alleges that it was made for a valuable consideration. Denies that the assignment of the note was colorable or fraudulent, but was for value. He admits that Joseph C. Hoagland is insolvent. An amended bill was filed, stating that Cornelius A. Hoagland pretended to have some interest in the lands, or a part of them, and makes

him a defendant. He answered, and alleges that he claimed
to hold the two quarter sections last sold, and that Andrew
Hoagland assigned the certificate of purchase to him, on the
14th day of December, 1858, and that he paid a valuable con-
sideration for them; and denies all knowledge of the fraud
charged in the bill. In November, 1861, the death of Elting
was suggested, and appellant, as administrator *de bonis non*,
was substituted as complainant.

Afterwards, in October, 1864, George Titman filed what is
denominated a bill of interpleader. In it he states that Joshua
J. Moore, on the 14th day of August, 1858, executed to him a
bond for $5,000, conditioned for the payment of $2,500, with
interest at ten per cent., and to secure its payment he and his
wife executed a mortgage on the S. W. 8, 7 N. 4 E. to Titman.
That default had been made in its payment, and suit had been
commenced at the September term, 1860, of the Fulton Cir-
cuit Court, for its foreclosure, and the venue of the suit had
been changed to Peoria, where the suit was still pending.
That on the same day Moore executed to him another bond
for $5,000, with like condition for the payment of $3,000, as
specified, and that Moore and wife executed a mortgage on
the N. E. 7, 7 N. 4 E. to secure the payment of the money.
That a default in payment had occurred, and at the June term,
1861, of the Fulton Circuit Court, a bill was filed for a fore-
closure, which was pending and undetermined, and that Moore
still held possession of the quarter.

He further states, that on the 20th of August, 1858, he and
Moore entered into a settlement of their business, and it was
agreed that the money loaned to Moore was to be applied to
the redemption of the three quarter sections from sales and
encumbrances. That Moore failed to redeem the land from
the sale to Hoagland, and that he frequently requested Tit-
man to redeem or buy from Andrew Hoagland. That Titman,
Moore and Hoagland met, and Moore urged him to redeem,
but no arrangement was made at that conference. That the

same parties subsequently met at Peoria, when Moore again urged Titman to purchase the lands from Hoagland, and to induce him to do so, promised if he should purchase, that he would yield possession of the land to Titman, and permit him to receive the rents and profits in payment of the interest on the sums secured by the mortgages to him, until Moore should redeem the same. That he became the purchaser from Andrew Hoagland, of the N. E. 7 and S. W. 8, for the sum of two thousand dollars, and received a deed for the same. That the suit instituted by Elting was operating to delay Titman, and the security was diminishing. The bill prays that Mansfield's suit be dismissed, and the injunction dissolved; and the deed from the master to Moore be vacated, and the lands conveyed to him, and all parties enjoined from interfering with the lands. Also that the marshal's deed be reformed, and a mistake corrected.

This bill of Titman was answered by Joshua J. Moore, and by Mansfield, and replications filed. At a subsequent term, on leave granted, Titman amended his bill. Joshua J. Moore also answered this amended bill. At the January term, 1866, Mansfield applied to the court for, and obtained leave to dismiss his bill as to N. E. 7 and S. W. 8, 7 N., 4 E. An order dismissing the bill to that extent was entered by the court, but Titman entered a motion to set aside the order, which was allowed by the court.

In February, 1866, there was a final hearing on all of the bills, answers, replications and proofs. On the hearing, Mansfield again moved the court for leave to dismiss his bill as to the two quarters, as to which he had before dismissed it. The court decreed that the original and amended bills be dismissed for want of equity, and the decree rendered March 15th, 1859, be set aside, and the deed made by the master in chancery to Joshua J. Moore, conveying the three quarters be canceled. And Andrew Hoagland was restored to all of his rights in the lands, and that the master should, on demand, re-convey

these lands to him, and under Titman's bill, it was ordered that the marshal's deed be reformed and corrected.   To reverse this decree, the cause is brought to this court.

Andrew Hoagland denies that the assignment to him was without consideration, and he alleges that it was made in good faith and for value.   And when the evidence is examined, it will be seen that it wholly fails to show that the assignment was colorable or fraudulent or without consideration.   He also denies all knowledge of the fraudulent facts charged in the bill, and the evidence fails to prove that he had.   The record then showing Andrew Hoagland to have been an innocent purchaser for a valuable consideration, Joshua J. Moore cannot claim to have Hoagland's title divested, because, it matters not to him whether the judgment on the note, which it is admitted he owed, was recovered by Hoagland or by the administrator of Joseph I. Moore.   Admitting that Joseph C. Hoagland had wrongfully obtained possession of the note, after the death of Joseph I. Moore, yet having obtained it, and recovered judgment on it, against Joshua J. Moore, and the latter having satisfied the judgment, by allowing his lands to be sold, he could not be made to pay it a second time to the administrator of Joseph I. Moore.   The equitable title of Andrew Hoagland could not then be divested on account of any equities of Joshua J. Moore, as the maker of the note, as he has none, so far as this record discloses.   He has merely paid his debt, and if the personal representatives of Joseph I. Moore suffered the note to be wrongfully obtained and collected by Joseph C. Hoagland, they must seek their remedy from him.

Joshua J. Moore is not before the court asking relief.   He is merely a defendant to the bill.   Had the administrator any equities as against Andrew Hoagland, which are superior to his, as he was an innocent purchaser of the marshal's certificate of sale, which would entitle the administrator to have Andrew declared a trustee in regard to the land ?   Clearly not.

The judgment was valid and binding against Joshua J. Moore, and his land having been sold under it, an innocent purchaser, or an innocent assignee, for a valuable consideration, of the certificate of purchase, from a purchaser, cannot be compelled to surrender his title because the judgment in equity may belong to the estate of Joseph I. Moore.   If his personal representatives have permitted Joseph C. Hoagland, wrongfully to obtain the judgment in his own name on a note that really belonged to them, they cannot make innocent persons suffer the consequences of their carelessness.   They can only look to Joseph C. Hoagland and make him responsible for the amount received by him, and for which they are entitled to a decree.   As to the question whether he was the rightful owner of the note, his default to the original bill admitted he was not, and he has never set it aside or opened the decree, and it stands in full force against him.   The decree was only opened as to Andrew, but not as to Joseph C. Hoagland.

Was Titman entitled to any relief under his so-called bill of interpleader?   We are unable to see that he was.   If his object was to foreclose his mortgage, he shows that proceedings were then pending expressly for the purpose.   We are at a loss to see that any relief he sought was in the slightest degree germane to this litigation.   His rights were wholly independent of this litigation.   If the master's deed to Moore should have been sustained, then it would enure to the benefit of his claims upon the land, if he had any.   It could not prejudice his rights in the slightest degree.   If on the contrary, the title was held to have been rightfully in Hoagland, and the master's deed improperly made, then, by his own showing, it would enure to his benefit, subject to any rights Joshua J. Moore might have under the arrangement which he sets out in his bill, but which he disclaims in his amended bill.   We can see no pretense for filing the bill to settle these rights.

Neither could he maintain this bill against all of these parties, to have the marshal's deed reformed. If he desired to have the correction made, he should have filed his bill against the marshal, or perhaps only have applied to the Circuit Court of the United States, and on motion, obtained an order for the purpose. The court below should have dismissed Titman's bill, with costs. This being so, it follows that the court erred in refusing to permit the administrator to dismiss his bill so far as it related to the quarters on sections seven and eight, in which Titman was alone interested, and it follows that all costs subsequently made in litigating with him, should be taxed against him.

Had Joshua J. Moore paid Elting the amount of the judgment, as required in the first decree, while it was in force, he would now be entitled to the benefit of the decree which must be rendered against Joseph C. Hoagland. But the record shows that he did not pay it. And hence he has no claim to the benefit of the decree.

The record shows that the interest of Joseph C. Hoagland was equally balanced, and he was therefore a competent witness for Andrew Hoagland. If the land was taken from the latter, Joseph C. would be accountable to him for the consideration paid for the assignment. If it was not, then Joseph C. Hoagland would be, as we hold him to be, accountable to the estate of Joseph I. Moore for the amount he received under the judgment.

For these reasons, the decree of the court below must be reversed, and the cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Decree reversed.*