JAMES W. MARTIN

*v.*

HENRY H. GILMORE *et al.*

1. UNITED STATES MARSHAL'S DEED—*successor of, may make without special order of court.* A deed executed by a United States Marshal in 1858, in pursuance of a certificate of purchase, executed by his predecessor in office, upon a sale on execution made in 1856, is sufficient to pass the title of the execution debtor, without any order of the court from which the execution issued for the marshal to make such deed as was required by the act of Congress of May 7, 1800.

2. FEDERAL COURTS—*process and proceedings of State courts adopted.* The act of Congress of 1828 adopted the *mesne* process and modes of proceedings in suits at common law, then existing under the State laws of the State where the court was held, including writs of execution and final process, and the proceedings thereunder, and the act of 1842 extended the provisions of the act of 1828 to all State laws on the subject in force at the time of the enactment of 1842. Hence a sale on execution, and all proceedings thereunder, by a United States Marshal, after that time, would be governed by the State law in force at the time of such sale and proceedings.

3. CONSTRUCTIVE SERVICE — *when decree becomes final.* Under the Chancery Act of 1845, a decree rendered against a defendant not personally served is merely interlocutory, and does not become final until the expiration of three years from the date of its rendition, and all rights acquired under such decree are subject to the action of the court in relation to such decree during the three years allowed to such defendant within which to open the same, and make his defense.

4. SAME—*effect of vacating a decree against party not served, upon rights acquired under it.* A deed made by the master in chancery in pursuance of, and which recites a decree rendered against a party not personally served, is notice to all persons claiming under it that such decree is not final, but is liable to be vacated and set aside within three years from the time it was rendered, and if such decree is so vacated and set aside within the time limited, all rights obtained under it, and all acts performed in executing it, are also annulled.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. CHAUNCEY L. HIGBEE, Judge, presiding.

Mr. J. S. WINTER, and Mr. D. McCULLOUGH, for the plaintiff in error.

Mr. W. C. GOUDY, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by James W. Martin against Henry H. Gilmore, to recover a certain quarter section of land in Fulton county. By an order of the court, S. Corning Judd, lessor of the defendant, upon his motion, was made a party defendant.

The parties waived a jury, a trial was had before the court, and judgment rendered in favor of the defendants.

The plaintiff brings the case here, and urges that the judgment of the court is contrary to the evidence and the law.

There are but two questions presented by this record for consideration. The first is as to the validity of the deed made by the United States Marshal to Andrew Hoagland. Second, if the deed is valid, then defendants insist the title shown in evidence by them is paramount to that of plaintiff.

Both parties claim title from Joshua J. Moore, who originally owned the land.

The plaintiff introduced in evidence a judgment rendered in the Circuit Court of the United States for the District of Illinois, on the 14th day of July, 1854, in favor of Joseph C. Hoagland, against Joshua J. Moore; also an execution issued on said judgment on the 1st day of September, 1854. The

execution shows a levy on the land in controversy September 10th, 1854, and a sale to Joseph C. Hoagland on September 1st, 1856, for $800. The sale was made by H. Wilton, United States Marshal, by A. C. Dixon, special deputy. A certificate of purchase was delivered to Joseph C. Hoagland, in the usual form, providing for a deed at the expiration of fifteen months, in case the land should not be redeemed.

On the 8th day of August, 1857, the certificate of purchase was assigned by Joseph C. Hoagland to Andrew Hoagland.

The plaintiff also introduced in evidence a deed from James W. Davidson, Marshal of Illinois, to Andrew Hoagland, upon the certificate of purchase, bearing date June 28th, 1858. The plaintiff admitted that the term of office of the marshal who made the sale had expired before the deed was made; that, before the execution of the deed, Joseph C. Hoagland had presented a petition to the Circuit Court of the United States for the Northern District of Illinois, for a deed of the premises to be made to him, and the court had ordered a deed to be made, which was the only petition presented, and the only order for a deed ever made.

The plaintiff then read in evidence a deed dated July 14th, 1870, from Andrew Hoagland to the plaintiff.

It is insisted by the defendants that the deed made by the marshal, Davidson, to Andrew Hoagland, is void, under the 3d section of an act of Congress passed May 7th, 1800, which is as follows:

"*Be it further enacted,* That, whenever a marshal shall sell any lands, tenements or hereditaments, by virtue of process from a court of the United States, and shall die, or be removed from office, or the term of his commission expire, before a deed shall be executed for the same by him to the purchaser, in every such case the purchaser or plaintiff at whose suit the sale was made may apply to the court from which the process issued, and set forth the case, assigning the reason why the title was not perfected by the marshal who sold the same, and thereupon the court may order the mar-

shal for the time being to perfect the title and execute a deed to the purchaser, he paying the purchase money and costs remaining unpaid."

The position taken by the defendants would, no doubt, be correct, if the deed was to be governed by the act of 1800, but the validity of the deed does not depend upon the provisions of that act, but it is directly within and must be governed by the Process Act of the 19th of May, 1828, and the subsequent act of August 23, 1842.

The first section of the act of 1828 declares that the forms of *mesne* process, and the forms and modes of proceeding in suits at common law, in the courts of the United States, held in States admitted into the Union since 1789, shall be the same in each of said States, respectively, as were then used in the highest court of original and general jurisdiction in the same, subject to such alterations and additions as the courts of the United States respectively shall, in their discretion, deem expedient, or to such regulations as the Supreme Court shall think proper, from time to time, by rules, to prescribe to any circuit or district court, concerning the same.

The third section declares that writs of execution and other final process issued on judgments and decrees rendered in any courts of the United States, and the proceedings thereupon, shall be the same in each State, respectively, as are now used in the courts of such State.

This act as effectually adopts the State laws in force at the time of its enactment, as if the State laws had been incorporated in full in the act itself.

The act of 1842 extends the provisions of the act of 1828 to all State laws in force on the subject at the time of the enactment of the act of 1842.

In the case of *Ross* v. *Duval*, 13 Peters, 63, the court, in speaking of the act of 1828, say: "This act adopts, in specific terms, the execution laws of the State." Again the court say, in the same case: "It must be recollected that this act of

1828 is a national law, and was intended to operate in the national courts in every State."

In *Beers* v. *Haughton*, 9 Peters, 361, the court, in discussing the effect of the act of 1828, use this language: "But the material consideration now to be taken notice of, is, that the act of 1828 expressly adopts the *mesne* processes and modes of proceedings in suits at common law then existing in the highest State courts, under the State laws, which of course included all the regulations of the State law as to bail; in regard, also, to writs of execution and final process, and the *proceedings thereunder*, it adopts in equally comprehensive language, and declares that they shall be the same as were then used in the courts of the State." See, also, *McCracken* v. *Haywood*, 2 Howard, 616.

It then remains to be seen what execution laws were in force in this State at the time the acts of 1828 and 1842 were adopted by Congress.

The act of the legislature of the 17th day of January, 1825, was in force and adopted by the act of Congress of 1828.

The 10th section of this act provides, that, upon a sale of lands by a sheriff under an execution, instead of executing a deed to the purchaser he shall give a certificate of purchase. The 13th section provides, if the lands shall not be redeemed within fifteen months, it shall be the duty of the sheriff, or his successor in office, or his executors or administrators, to complete such sale by executing a deed to the purchaser. See Purple's Real Estate Statutes, page 328.

On the 19th of February, 1841, the legislature passed an act amending the act of 1825, the 5th section of which declares, that a certificate of purchase given on sale of lands shall be assignable by indorsement thereon; and every person to whom the same shall be assigned, in case the lands are not redeemed, shall be entitled to a deed. See Purple's Real Estate Statutes, 339.

By the act of Congress of 1842, this provision of our statute, which authorized the officer who made the sale, or his suc-

cessor in office, to execute a deed to the purchaser or his assignees, became the law of the land, and was obligatory upon the marshal of the Federal Court of this State. From these views it follows, that the deed made by the marshal, James W. Davidson, to Andrew Hoagland, was valid.

On the trial of the cause in the circuit court, the defendants, in order to show title in themselves from Joshua J. Moore, proved, that at the February term, 1858, of the circuit court of Fulton county, one Butz recovered a judgment against Moore; that in January, 1859, John Elting, administrator of Joseph I. Moore, filed a bill in chancery in the circuit court of Peoria county, against Joseph C. Hoagland, Andrew Hoagland, and Joshua J. Moore, and after personal service on Moore and publication as to the Hoaglands, on the 15th of March, 1859, a decree was rendered, by which the sale of the land in controversy by the marshal to Joseph C. Hoagland was set aside; that Moore pay the sum due on the judgment to Elting, administrator, and that both of the Hoaglands convey the land to Joshua J. Moore, and in default the master in chancery convey for them. It further appeared, that Moore paid the money according to the decree, demanded a deed, which the Hoaglands refused to make, and on the 16th of July, 1859, the master in chancery executed the deed, which was recorded in Fulton county, on the 21st of July, 1859.

On the 10th day of May, 1859, an execution was issued upon the Butz judgment, and levied on the land in controversy, and on the 7th day of November, 1860, the premises were sold. Subsequently, other judgments were obtained in Fulton county against Moore, and after the expiration of twelve months, no redemption having been made, judgment creditors redeemed, the land was sold, and Judd became the purchaser, and on the 14th of October, 1862, obtained a sheriff's deed.

The plaintiff, as rebutting testimony, proved, that, at the June term, 1859, of the Peoria circuit court, Andrew Hoag-

land applied to the court, under the provisions of sec. 15 of the Chancery Act of 1845, to set aside the decree of March 15, 1859, in the case of *Elting, Admr.* v. *Hoagland et al.* and for leave to answer. In January, 1869, the court granted the motion, and an answer was filed by Andrew Hoagland. Proof was taken, and in February, 1866, a decree was rendered. The cause came to this court, and the decree was reversed at the January term, 1868. See *Mansfield, Admr.* v. *Hoagland,* 46 Ill. 359.

The cause was again heard in the Peoria circuit court on the 17th of July, 1869, and a decree was rendered, by which the decree of March 15, 1859, was set aside, and a conveyance of the land in question was awarded to Andrew Hoagland. From this decree an appeal was taken to this court, and at the September term, 1869, it was affirmed. *Mansfield, Admr.* v. *Hoagland,* 52 Ill. 320.

It does not appear, from the evidence, that Judd had any actual notice of the application of Andrew Hoagland to set aside the decree of March 15. 1859, or the subsequent litigation in regard thereto ; and it is urged by him, that, he having acquired the title which Moore obtained under the decree of March 15, 1859, without notice, the subsequent decree of the Peoria circuit court, vacating the decree from which he derives title, can not affect him—in other words, that he is an innocent purchaser.

This question mainly depends upon the construction to be given to sec. 15 of the Chancery Act of 1845, R. S. 95. By the terms of this section of the statute, a decree rendered against a defendant who was served by publication of notice, is not final and conclusive. Such decree is merely interlocutory. The act gives such a defendant three years in which he has the right to come in and obtain leave to answer the bill, and, upon filing an answer, the act declares "such proceedings shall be had as if the defendant had appeared in due season, and no decree had been made."

It can not be pretended, from this language, by any fair or reasonable construction, that it was the intent of the legislature that a decree of this character would be final or conclusive, until after the expiration of three years. When the act declares the decree shall not be final and conclusive, we are at a loss to understand how rights acquired under such a decree, before the three years expire, are entitled to protection.

The deed made by the master in chancery to Moore, which was recorded in Fulton county, contained a copy of the decree. This deed was upon record at the time the land was levied upon and sold under an execution issued upon the Butz judgment. He, and any person who might purchase, are presumed to know the law. The decree under which it is claimed Moore obtained title, was notice to the world that it was not final—that for three years it was liable to be vacated and set aside. All rights acquired under such a decree must be held subject to the action of the court during the three years specified in the statute. A different construction would defeat, entirely, the benefits intended by the act to be secured to non-resident defendants.

This, however, is not an open question in this court. In *Southern Bank of St. Louis* v. *Humphreys,* 47 Ill. 231, it was held, in a similar decree, that all proceedings under the decree should be subject to the vacation of it—that not only the decree, but all acts performed in executing it, should stand or fall with the decree. We are, therefore, of opinion, that Judd did not, under the evidence, acquire title by the sale of the land on the Butz judgment, and the subsequent redemption and sales.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*