## BRUNSON et al. v. COM'RS OF LAND OFFICE.

No. 20029.   Opinion Filed Sept. 23, 1930.

Rehearing Denied Nov. 3, 1930.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiffs in error.

Geo. E. Merritt and J. L. Carpenter, for defendants in error.

MASON, C. J.   Parties occupy the same position here as in the trial court and will be referred to herein as plaintiffs and defendants, as they there appeared.

Oil was discovered near Red river in the year 1919, and a dispute arose between the state of Oklahoma, the state of Texas, and the United States government as to the ownership of the Red river bed.   Texas claimed title and took possession by armed force.   Oklahoma claims title and the defendants, Commissioners of the Land Office, as a basis for the assertion of Oklahoma's title, issued oil and gas leases to the plaintiffs or their assignors.   Suits were instituted in the Texas courts, the Oklahoma courts, and the federal district court for the Western district of Oklahoma, and an original action was instituted in the United States Supreme Court, where the dispute was finally settled.   State of Oklahoma v. State of Texas, 259 U. S. 565, 42 Sup. Ct. 594, 66 L. Ed. 1067.   Oklahoma was held to have no title and said leases executed by the defendants were decreed to be void.

It appears that there was an agreement between the defendants, Commissioners, and the bidders that monies deposited as bonuses, rentals, and forfeitures would be held by said Commissioners, and if it should be determined that Oklahoma had no tit'e to such lands said money so deposited would be refunded.   Such money was held by said Commissioners in the escrow account for a short time and was then transferred to the official depository.   After the decision of the Supreme Court of the United States, above referred to, the plaintiffs made demand upon defendants, Commissioners, to issue checks refunding said money, and upon refusal this action was instituted to mandamus the members of the Commission to issue such checks.   The trial court rendered judgment for the defendants, and plaintiffs appeal.

The Commissioners of the Land office, by section 32, art. 6, of the Constitution of Oklahoma, are empowered to sell, rent, dispose of, and manage the school lands and other public lands of the state, and in furtherance of such authority the Commissioners were vested with the power to enter into said agreements with the plaintiffs, and

220

we conclude that such contracts were legal and enforceable.

The principal question for our determination is whether the funds involved herein can be refunded by the Commissioners without an act of the Legislature. We think they can. This seems to have been the only obstacle which has prevented or delayed a refund of these monies. The statutes pertaining to the state depository system appear to authorize it. Section 8608, C. O. S. 1921, designates the State Treasurer as the official depository. Section 8609, C. O. S. 1921, requires all state officials, boards, commissioners, and employees receiving any "monies, checks, drafts, orders, vouchers, funds, rentals, penalties, costs, proceeds of sale of property, fees, fines, forfeitures, and public charges of every kind received or collected by virtue or under color of office" to place the same in the official depository. Section 8613, C. O. S. 1921, provides that when such funds are deposited in the official depository, a credit shall be given to the officers, board, commission, or employees making such deposit and "may be withdrawn only in transfer into the state treasury such parts thereof as may be due the state or its funds, or funds under its management, or in refund of erroneous or excessive collections and credits, and in payment of legal claims and charges against any trust deposit or fund included in any such account."

Section 8614, C. O. S. 1921, provides that "all monies that shall be received during any calendar month by any state officer, state board, state commission, or the members or employees of either thereof, accruing as a part of the state's general revenue or any other appropriated funds, shall be paid into the state treasury—that is, transferred from the official depository to the fund or funds in the state treasury to which the same belongs by the authority so receiving the same on or before the second Monday following the close of the calendar month in which such monies shall have been received. * * *"

The money involved herein never became the property of the state and there was no fund into which the same could legally be transferred from the official depository. By the statutes, the Legislature created a system for the handling of the finances of the state, and of all monies coming into the hands of public officials. It specifically designated a particular fund into which all monies must first be deposited by public of-

ficials with the State Treasurer. This is designated as the official depository. They then specify the manner in which such monies, so received and deposited in the official depository, may be withdrawn. The monies involved in this action were deposited under an agreement to be held for a definite purpose, and when placed in the official depository it remained there for that purpose. If transferred from the official depository, other than in pursuance of said agreements, such transfer would, under the statutes, be an erroneous transfer and the money, in law, would still remain in the official depository as a trust deposit subject to be withdrawn by order of the defendants.

The Supreme Court of the United States was considering a similar question in Ward v. Board of County Commissioners of Love County, 253 U. S. 17, 64 L. Ed. 751, and in the third paragraph of the syllabus held:

"No statutory authority is essential to enable or require a county to refund unlawful taxes collected by it by coercive means. * * *"

In that case a restricted Indian citizen had paid taxes on his allotment because the county was threatening to sell the same for nonpayment thereof. He then brought suit to recover the money so paid, and the county, among other things, contended that there was no statutory authority for such repayment. In the body of the opinion, Mr. Justice Van Devanter, speaking for the court, said:

"It is a well-settled rule that 'money got through imposition' may be recovered back; and, as this court has said on several occasions, 'the obligation to do justice rests upon all persons, natural or artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.'"

In the case at bar, the state of Oklahoma had no title to the Red river bed and its attempted leasing thereof was null and void. The defendant Commissioners received the money involved herein under an agreement to hold it pending the determination of the ownership of said river bed and to return it if Oklahoma's title failed. To say that the defendants could transfer this money to the state in violation of such agreement and not incur any obligation to repay the same under such circumstances, is nothing short of saying that the money of the plaintiffs could be taken without due process of law. After Oklahoma's title failed, it became the duty of the defendant Commis-

sioners to return this money to the plaintiffs.

It is contended that mandamus will not lie against the Governor of the state in his official capacity to compel him to perform an official act. With this we agree. The record discloses that service of summons was not had upon the Governor, but service was had upon the Commissioners of the Land Office of the state of Oklahoma as a board, and such is ample to confer jurisdiction upon the court.

Mandamus will lie to compel the performance of a ministerial act by the members of the Commissioners of the Land Office of the state of Oklahoma other than the Governor, and should issue in this case to compel the issuance of checks in refund of monies involved. State ex rel. v. Cruce et al., 31 Okla. 486, 122 Pac. 237.

The judgment of the lower court is reversed, and the cause is remanded, with directions to the district court of Oklahoma county to issue a peremptory writ of mandamus directed to the Commissioners of the Land Office, other than the Governor, commanding them to issue or cause to be issued checks or vouchers in refund of the several sums of money deposited by the plaintiffs or their assignors as bonuses, rentals, and forfeitures, as disclosed by the record herein.

LESTER, V. C. J., and CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur.

HUNT and ANDREWS, JJ., absent. RILEY, J., not participating.

Note.—See under (2) anno. L. R. A. 1917F, 775; 18 R. C. L. p. 200; R. C. L. Perm. Supp. p. 4323.