STATE ex rel. COM'RS OF LAND OFFICE v. WARDEN et al.

No. 34170.    Nov. 27, 1951.

Rehearing Denied March 25, 1952.

*242 P. 2d 129.*

T. J. Lee, R. H. Dunn, and Sam Hill, Oklahoma City, for plaintiff in error.

Cook & Bingaman and H. H. Montgomery, Purcell, for defendants in error.

DAVISON, J. This action originated in 1937 by the plaintiff, the State of Oklahoma, on relation of the Commissioners of the Land Office, filing suit to foreclose a mortgage covering some 107 acres of land in McClain county, Oklahoma. Irving C. Warden and his wife, Bessie S. Warden, the mortgagors, and numerous other parties were made defendants. The case has on two previous occasions, been before this court. The parties will be referred to as they appeared in the trial court which is the same order in which they appear here.

Pursuant to foreclosure judgment rendered on March 5, 1941, the property was sold to plaintiff at sheriff's sale which was confirmed on March 5, 1942. Subsequently, and on August 12, 1944, upon motion of one of the defendants who was in the armed forces, the foreclosure judgment was vacated and the sale proceedings founded thereon was set aside. On appeal to this court, that action of the trial court was affirmed. State ex rel. Com'rs of the Land Office v. Warden, 197 Okla. 97, 168 P. 2d 1010.

Lying immediately north and east of the lands embraced in the mortgage but separated therefrom by the Canadian River, which formed the common boundary line, was another tract of land owned in fee by plaintiff, to which title had been obtained by grant. During the years there had been a gradual change in the course of the river and a resultant change in the boundary line between the two parcels of land. A short time prior to the order vacating the foreclosure judgment, the plaintiff, being in possession of both tracts, had, with the approval of the trial court dated December 8, 1943, executed several oil and gas leases, each covering a portion of the land owned in fee and a portion of the land covered by the mortgage. This approval of the court was on condition that the proceeds thereof be held subject to order of the court pending final determination of the action and to abide the judgment therein. The plaintiff received in bonuses something over $40,000 for the execution of these leases. The entire mortgage debt was between three and four thousand dollars.

When the cause was remanded and the defendants permitted to discharge the mortgage debt and retain title, it became necessary for the trial court, because of the change in the common boundary line between the fee lands and the mortgaged lands occasioned by the change in course of the river, to determine the location of that common boundary line and the acreage in each tract so that the bonus money, received from the sale of the oil and gas leases thereon and held by plaintiff, might be equitably distributed between the parties entitled thereto. On November 22, 1946, after the mandate from this court was filed, the trial court rendered judgment fixing the boundaries of the properties and in the accounting awarded defendants a net judgment, after deduction of the mortgage indebtedness, of $33,844.48 with interest thereon at 6% per annum from said date until paid. Among others, the judgment contained a finding that the

bonus money had "been paid to the plaintiff herein under order of this court and the plaintiff holds the same in custody of this court." Thereafter, plaintiff paid defendants approximately $13.000 on the judgment, continuing to hold the balance of some $20,000. Both plaintiff and defendants appealed to this court from that judgment, each urging that the trial court erred in the location of the boundary line. This court, on appeal, held that the defendants were the owners of a substantially greater acreage in the bed of the river than had been adjudged theirs by the trial court. State ex rel. Com'rs of the Land Office v. Warden et al., 200 Okla. 613, 198 P. 2d 402. In order to effectuate the conclusion reached, this court reversed and remanded the cause for further proceedings not inconsistent with the views expressed in the opinion.

Upon further hearing after remand, the trial court rendered judgment for defendants on October 28, 1948, in the principal amount of slightly more than $27,000 reserving for future consideration the question of interest on the amount unpaid on the original judgment of November 22, 1946, which was included in this latter judgment. Plaintiff paid defendants the principal amount of the judgment of October 28, 1948. Thereafter, on December 16, 1948, the trial court rendered judgment against plaintiff for the additional sum of $2,378.82, being interest at the rate of 6% per annum on the unpaid $20,685.39 portion of the judgment of November 22, 1946, from the date of its rendition until its payment in October 1948. This appeal has been perfected by plaintiff from the judgment of December 16, 1948, for $2,378.82, the item of interest.

For reversal, plaintiff first urges that "Interest is not a proper charge against the State in the absence of contract or statute specifically authorizing the State to pay interest;" and that "Interest is in the nature of damages and damages cannot be awarded against the sovereign without its consent."

In argument, plaintiff stresses the rule applied in the case of Schlesinger v. State, 195 Wis. 366, 218 N. W. 440, 57 A.L.R. 352, to the effect that:

"Interest, when not stipulated for by contract, or authorized by statute, . . . is not to be awarded against a sovereign government, unless its consent to pay interest has been manifested by an act of its Legislature, or by a lawful contract of its executive officers . . ." and contends that the same was approved by this court in the case of State ex rel. Com'rs of the Land Office et al. v. Brunson, 175 Okla. 101, 51 P. 2d 500, wherein the Schlesinger case was cited. But, in the case at bar, we are not confronted with the question of the soundness of that rule. Rather it is a question of the extent of applicability of the provisions of that part of 15 O.S. 1941 §274, as follows:

"All judgments of courts of record and justices of the peace shall bear interest from the date on which they are rendered at the rate of six per cent per annum: . . ."

The plaintiff in this case stands in the position of having voluntarily come into court seeking affirmative relief and placing itself, for that purpose, under the jurisdiction of that court. At its own insistence, it has collected some $40,000 in money over and above its mortgage indebtedness of less than 10 per cent of that amount. Such sum could have been very conveniently paid into the registry of the court to await final disposition. But, plaintiff insisted on holding some $20,000 of defendants' money as determined by the trial court, during the time required to perfect and present an appeal to this court. Had such action been indulged in by an individual, there would have been no doubt of the applicability of the above-quoted statutory provision. Therefore, the question resolves itself simply into whether or not the statute applies to the sovereign when voluntarily within the jurisdiction of the court.

This is a question of first impression in this court but it has been before the courts of other jurisdictions. In the case of Franklin Bros. et al. v. Standard Mfg. Co. et al. (Tex. Civ. App.) 78 S. W. 2d 294, it was held:

"Interest is recoverable on judgment against state from and after its date at legal rate."

In the case of Bryan County, Okla., et al. v. United States, 123 F. 2d 782, the United States Circuit Court of Appeals said:

"The court correctly refused interest on the taxes from the date of their collection but allowed judgment for interest from the date of its rendition."

In the case of State v. La Plata River & Cherry Creek Ditch Co. et al., 101 Colo. 368, 73 P. 2d 997, at 998, the court followed the following rule:

" 'When a state invokes the judgment of a court for any purpose, it lays aside its sovereignty and consents to be bound by the decision of the court, whether such decision be favorable or adverse.' State ex rel. Smyth v. Kennedy, 60 Neb. 300, 305, 83 N. W. 87."

In the last-cited case, the rule was applied to interest as against the state in the absence of statute. We need not go that far herein. However, we see no reason why the above-quoted statute should not apply to judgments against the state when under the jurisdiction of the court.

Plaintiff then raises the question as to where the money will come from to pay such item since the state's portion of the bonus money became a part of the permanent school fund by virtue of sections 8 and 9 of the Enabling Act and any payment out of the fund for interest would violate sections 2 and 3 of art. 11, Okla. Const., citing School District No. 23, Okfuskee County, v. Commissions of Land Office, 166 Okla. 226, 27 P. 2d 149. With this contention we cannot agree.

It must be borne in mind that this phase of this case is, to all intents and purposes, a suit in accounting, and that the judgment, although personal, amounts to an apportionment of the bonus money to the parties and in the

proportion to which each is entitled. By the judgment, from which this appeal was taken, the trial court, in effect, adjudged that, of the monies in plaintiff's hands, defendants are the owners of and entitled to $29,554,95 which is composed of two items, namely: $27,176.13 principal and $2,378.82 interest. Thus, this sum of $29,554.95 was defendants' money to which the state had never obtained title. Until its division by judgment in accounting, the entire amount received as bonus payments constituted a trust fund, separate, apart and distinguishable from all other funds of the Land Office. As was said in the first case of Brunson et al. v. Com'rs of Land Office et al., 145 Okla. 219, 292 P. 562:

"The money involved herein never became the property of the state, and there was no fund into which the same could legally be transferred from the official depository . . . To say that the defendants could transfer this money to the state . . . under such circumstances is nothing short of saying that the money of the plaintiffs could be taken without due process of law. After Oklahoma's title failed, it became the duty of the defendant commissioners to return this money."

Thus, the funds, not having yet become the property of the state, are trust funds and are not subject to the provisions of sections 2 and 3 of article 11 of the Oklahoma Constitution.

Plaintiff's next contentions are that interest cannot be charged on the judgment because the funds were, in reality, in custodia legis, and also that there is no liability for interest when both parties appeal from the judgment. The case of Seal et al. v. Banes et al., 183 Okla. 203, 80 P. 2d 657, cited by plaintiff, is of no benefit since it deals with interest before judgment on royalty withheld pending determination of the ownership of land. The order of the trial court modifying the previous restraining order and allowing plaintiff to lease the lands of both parties for oil and gas purposes and to "hold the proceeds of any sale subject to order of this court pending determination of this action or until the further order of this court," was made on December 8, 1943. The "further order of this Court" was made on December 11, 1946, at which time the court determined the amount of bonus money belonging to each individual party. During that time (December 8, 1943, to December 11, 1946), the funds were being held under order of court and were in custodia legis. But we find no reason why, after determination of the amount due each party and after payment was ordered made to defendants by plaintiff on December 11, 1946, the money voluntarily received by plaintiff as bonus payments on leases covering the lands of all parties and, in a sense, forcibly held by plaintiff in violation of the order, should be considered as in custodia legis, nor does plaintiff cite any authority supporting such a contention.

Plaintiff relies upon the case of Harden v. Harden, 191 Okla. 698, 130 P. 2d 311, to support its position that interest should not be allowed on the judgment because both parties appealed. That case does not so hold. It was there said that such seemed to be the rule generally. "But it is subject to the rule . . . that the question of suspension of interest pending appeal is largely determined by the character of the case and the result of the appeal." In the case at bar, the judgment of the trial court, in an accounting, was that defendants were the owners of some $20,000, held by plaintiff, and ordered its payment to them. Upon appeal, this court's judgment was that, of the money held by plaintiff, defendants were entitled to approximately $27,000. The defendants should not be denied interest on the judgment for the reason that they were entitled, as an original judgment, to some 1/3 more than was awarded them. The trial court was correct in so holding.

The judgment is affirmed.

HALLEY, V.C.J., and CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur.