**WILKIN et al. v. SHELL OIL CO.**

**SHELL OIL CO. v. WILKIN et al.**

Nos. 4298, 4299.

United States Court of Appeals
Tenth Circuit.

Dec. 26, 1951.

On Rehearing June 11, 1952.

W. R. Withington and Wayne W. Bayless, Oklahoma City, Okl. (Gilliland, Withington & Shirk, all of Oklahoma City, Okl., H. D. Moreland, Tulsa, Okl., and L. G. Brewer, Elk City, Okl., on the briefs), for appellants and cross-appellees.

George W. Cunningham, Tulsa, Okl. (Mark Dunlop, Gordon Watts and Jesse M. Davis, all of Tulsa, Okl., on the briefs), for appellee and cross-appellant.

Before PHILLLPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Shell Oil Company [1] brought this action against Wilkin and others to quiet the title to three oil and gas leases held by it on the following described lands, situate in Beckham County, Oklahoma, to wit:

The Southeast Quarter (SE¼) of Section Nine (9) and the Northwest Quarter (NW¼) of the Southwest Quarter (SW¼) of Section Ten (10), Township Ten (10) North, Range Twenty-one (21) West, containing 200 acres.

The facts are not in substantial dispute. On January 11, 1929, C. C. Webb and Ruby I. Webb, his wife, gave a mortgage on the land to the Commissioners of the Land Office of the State of Oklahoma to secure an indebtedness of $3500. On August 7, 1931, C. C. Webb conveyed the land to Ruby I. Webb, subject to the mortgage to the State of Oklahoma.[2] The deed was made without consideration and Ruby I. Webb never claimed any equitable interest in the land.

On July 7, 1937, the Webbs, by mineral deed, conveyed an undivided one-half interest to the minerals in the land to W. E. Hocker. On July 8, 1938, Hocker, by mineral deed, in which his wife joined, conveyed an undivided one-fourth interest in the minerals in the land to J. G. Scott. On September 21, 1939, W. E. Hocker died testate. By his will, he devised all of his interest in the minerals in the land to Martha M. Hocker, his widow, and Walter E. Hocker, Jr., his son.

On March 25, 1940, C. C. Webb executed and delivered a quitclaim deed to Wilkin.

1. Hereinafter called Shell.

2. Hereinafter called the State.

Ruby I. Webb did not join in that deed. Wilkin immediately entered into possession of the land and collected the rents and profits from the occupying tenant and remained in such possession, through the tenant, until December 8, 1941, when a receiver for the land was appointed in the foreclosure proceedings referred to, infra.

On November 18, 1941, the State commenced an action in the District Court of Beckham County, to foreclose the mortgage. To that action it made the Webbs, Wilkin, Martha M. Hocker, Walter E. Hocker, Jr., Scott, and others, parties defendant. In November, 1941, personal service of process in the foreclosure suit was obtained upon all the defendants thereto, with the exception of the Webbs and Wilkin. Service was made on the Webbs and Wilkin by publication. Copies of the petition and publication notice were mailed to the Webbs on May 1, 1943.

Wilkin was inducted into the military service of the United States on April 18, 1942. He was honorably discharged on February 21, 1946. A copy of the petition and a copy of the publication notice were not mailed to Wilkin and he had no actual notice of such suit until after his discharge from the military service.

On June 24, 1943, an attorney for the State in the foreclosure suit filed an affidavit in that proceeding in which he averred that he did not know and could not ascertain, by any means within his control or within the control of the State, whether Wilkin was or had been, within sixty days prior to the date of the filing of such affidavit, in the military or naval service of the United States, and in which he requested that an attorney be appointed to represent the interests of any defendants in the military or naval service within the meaning of 50 U.S.C.A.Appendix, § 520. The affidavit was false. The affiant knew, at the time he made it, that Wilkin was in the military service of the United States, that a copy of his address could be obtained, and that a copy of the petition and of the publication notice could be served upon him by mail.

On June 24, 1943, a judgment was entered in the foreclosure proceeding adjudging that the Webbs were indebted to the State in the amount of $6630.03 with interest thereon at ten per cent per annum from June 24, 1943, until paid, $23 abstract expense, $350 attorney's fee, and the costs of the action, and further adjudging that if the defendants failed, for a period of six months from the date of judgment, to pay the State the amount of such judgment, together with interest, costs, and attorney's fee, that an order of sale should issue directed to the Sheriff of Beckham County, commanding him to advertise and sell "without appraisement" the land to satisfy such judgment. Appraisal was expressly waived in the mortgage.

On January 24, 1944, an order of sale issued. The State was the successful bidder at the sale. On March 13, 1944, an order was entered confirming the sale and directing the Sheriff of Beckham County to issue to the State a deed to the land. On April 20, 1944, a Sheriff's deed was issued to the State, which was recorded April 24, 1944, in the records of Beckham County. Immediately thereafter, the State went into possession of the land under claim of title thereto.

On May 7, 1945, Carl S. Ford, acting for Shell, obtained from the State three oil and gas leases covering in the aggregate the 200-acre tract of land, each running for a period of five years and containing a provision for delay rentals and a provision that the leases should be void unless a well, producing oil or gas in paying quantities, should be completed on the land within the five-year period. The leases were duly recorded on July 14, 1945. On September 14, 1945, Ford assigned the leases to Shell. The assignments were duly recorded on October 5, 1945. Prior to the purchase of the leases by Ford on behalf of Shell, Shell examined an abstract of title to the land, which included a transcript of the foreclosure proceeding. Shell relied upon the validity of the judgment rendered in the foreclosure suit.

On April 13, 1946, within 60 days after Wilkin was discharged from the military service, and within three years after the date of the foreclosure judgment, Wilkin filed an application in the fore-

closure suit to set aside the Sheriff's deed, vacate the judgment, and permit him to redeem the land from the mortgage. In his application he alleged that at the time the foreclosure action was instituted he was the record owner of the land; that at the time the State filed its affidavit to obtain service by publication, he was in the active service of the United States Army, stationed at Fort Benning, Georgia; that he was inducted into the Army, April 18, 1942, at Fort Leavenworth, Kansas; was transferred to Fort Benning, Georgia, in December, 1942, transferred to Camp Wheeler, Georgia, in December, 1942, and transferred to the 96th Division in September, 1943; that on January 4, 1944, he embarked for the South Pacific combat area; that he returned to the United States, November 29, 1945, and was honorably discharged from the Army, February 21, 1946; that he did not receive a copy of the petition nor a copy of the notice of publication in the foreclosure suit and had no notice of such suit; that by reason of the foregoing facts, he was deprived of any opportunity of defending the foreclosure suit and of any opportunity to redeem the land from the judgment entered therein; that if the State had exercised due diligence and made reasonable inquiry, it could have ascertained the fact that he was in the military service and his address; that the foreclosure suit should have been stayed by reason of the provisions of 50 U.S.C.A.Appendix, § 520, and that by reason of the fact the proceeding was not stayed, he was deprived of any opportunity to defend the action and was prevented from redeeming the property from the foreclosure judgment.

He further alleged that after the issuance of the Sheriff's deed, the State, for a cash bonus of $3420, executed the three oil and gas leases on the land to Ford, that such leases were assigned by Ford to Shell, and that the State should be required to make an accounting of the rents and other moneys received from the land and of the bonuses and rentals received under the three oil and gas leases.

He prayed that the judgment in the foreclosure suit be vacated, the deed cancelled, and an accounting be had by the State for the amount of rents and other moneys received by it from the land.

On April 2, 1947, Wilkin filed an amended application to vacate the judgment and cancel the Sheriff's deed, which related to taxes, and in which he tendered to the State all taxes, interest, and penalties due on the land.

On May 13, 1948, Wilkin filed a second amended application to vacate the judgment and Sheriff's deed, in which he set up the judgment in the foreclosure suit, the order of sale, the sale, the order of confirmation, and the Sheriff's deed; and averred that, because of his military service, he was unable to redeem the property from the mortgage prior to the issuance of the order of sale, the Sheriff's sale, and the order of confirmation; and that if the judgment and sale were vacated he could and would tender into open court the amount due on the mortgage indebtedness, all taxes due on the property, and all costs and legal expenses due.

He further averred that the Sheriff's sale was made under an order of sale issued without appraisal; that under the statutes of Oklahoma, a foreclosure sale may not be made without appraisal until six months after the entry of the foreclosure judgment; that under the provisions of 50 U.S. C.A.Appendix, § 525, the period he was in the military service of the United States could not be included in computing such six months' period and that such six months' period did not expire until after the sale and order of confirmation and that the sale and order of confirmation were void.

He prayed that the judgment be vacated and the sale cancelled and that he be permitted to redeem.

On July 22, 1948, the State filed a demurrer to the motion and amended motions. The demurrer was overruled and the State elected to stand thereon.

On July 22, 1948, the state court entered a judgment in the foreclosure suit, in which it adjudged that the judgment therein be vacated, the order of confirmation be set aside, and the Sheriff's deed cancelled;

and ordered that the State make a full and complete accounting of moneys received from agricultural leases on the land, bonuses received from oil and gas leases on the land, and moneys received from all other sources from the land. Such judgment was affirmed by the Supreme Court of Oklahoma on November 8, 1949. State ex rel. Com'rs of Land Office v. Wilkin, 202 Okl. 177, 211 P.2d 509.

On December 8, 1949, the State filed an accounting, which included the bonuses and rentals received under the three oil and gas leases. On December 10, 1949, Wilkin filed an objection to the inclusion in the accounting of the bonuses and delay rentals, stated that he refused to accept the amount of the bonuses and delay rentals, and prayed that the court expunge from the accounting all sums received by the State for bonuses and delay rentals.

On December 29, 1949, the state court entered a judgment in the foreclosure proceeding, in which it adjudged that the State was only entitled to interest at the rate of five per cent per annum on the mortgage indebtedness from July 26, 1935, until paid; that Wilkin was not required to accept, under the accounting, the moneys received by the State as bonuses and delay rentals, and that the State should not apply the moneys received by it for bonuses and delay rentals in reduction of the mortgage debt, but should pay such moneys into the court clerk of Beckham County, to be held subject to the further order of the court. Agreeable to such judgment, the State paid to the clerk of the District Court of Beckham County the amount received by it as bonuses and delay rentals.

Shell first learned, in November, 1948, of the motion and amendments thereto filed by Wilkin in the foreclosure suit. The State requested Shell to assist it on the appeal to the Supreme Court of Oklahoma. Shell refused.

On February 21, 1949, the Webbs executed and delivered to Wilkin a quitclaim deed for the land.

Wilkin paid the full amount of the mortgage indebtedness to the State and the State executed and delivered to him a release of the mortgage on December 27, 1949.

Shell had acquired a block of leases in the vicinity of the 200-acre tract of land, which, with the three oil and gas leases above referred to, covered in the aggregate approximately 10,000 acres. On September 17, 1946, it commenced the drilling of the first producing well in such block on Section 14, T 10 N, R 21 W and completed it on November 24, 1947. Thereafter, and prior to April 25, 1949, it completed the drilling of producing wells in such block on Sections 15, 23, 24 and 25, T 10 N, R 21 W. The nearest of such wells to the 200-acre tract of land was located in the SW¼ of Section 15.

On January 16, 1949, Shell commenced the drilling of a well in the SW¼ of Section 9, offsetting the 200-acre tract of land. By drill stem tests made in the latter part of April, 1949, it was proven to be a producer.

On April 23, 1946, the value of the three oil and gas leases was approximately $3 per acre. In 1949, such value had increased to $1,000 per acre, by reason of the oil and gas wells drilled by Shell.

Prior to 1949, Shell had paid the delay rentals due under the three oil and gas leases. Prior to May 7, 1949, the date the delay rentals were due for that year, Shell tendered the amount due to Wilkin. Wilkin refused the tender.

Prior to acquiring such oil and gas leases, Shell made no investigation to determine whether Wilkin was in the military service of the United States.

The trial court held that since the State was a party to the foreclosure proceedings, it was not a bona fide purchaser for value, and that since Shell acquired its title from the State, Shell was not a bona fide purchaser for value. It concluded, however, that since Shell was not a party to the proceedings instituted by Wilkin in the foreclosure suit, it was not bound thereby. It entered a judgment quieting Shell's title to the three oil and gas leases, but ordered that such judgment should be without prejudice to Wilkin's right to maintain

a direct attack upon the judgment and order of confirmation in the foreclosure proceeding and the Sheriff's deed to the State.

Wilkin and the other defendants below have appealed, and Shell has cross-appealed.

12 Okl.St.Anno. § 176, in part, reads: "A party against whom a judgment * * * has been rendered, without other service than by publication in a newspaper, may, at any time within three years after the date of the judgment or order, have the same opened, and be let in to defend. Before the judgment or order shall be opened the applicant shall * * * make it appear to the satisfaction of the court, by affidavit, or other evidence that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense; but the title to any property, the subject of the judgment or order sought to be opened, which, by it, or in consequence of it shall have passed to a purchaser in good faith, shall not be affected by any proceedings under this section, * * *."

12 Okl.St.Anno. § 1031, in part, reads:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made:

\*      \*      \*      \*      \*      \*

"Second.  By a new trial granted in proceedings against defendants constructively summoned, as provided in Section 4728 (12 Okl.St.Anno. § 176).

\*      \*      \*      \*      \*      \*

"Fourth.  For fraud, practiced by the successful party, in obtaining the judgment or order."

12 Okl.St.Anno. § 1035, in part, reads: "A judgment shall not be vacated on motion or petition, until it is adjudged that there is a valid defense to the action on which the judgment is rendered; * * *."

50 U.S.C.A.App., § 520, in part, reads: "(1) In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service. If unable to file such affidavit plaintiff shall in lieu thereof file an affidavit setting forth either that the defendant is in the military service or that plaintiff is not able to determine whether or not defendant is in such service. * * *."

50 U.S.C.A.Appendix, § 525, as amended by the Act of October 6, 1942, 56 Stat. 770, in part, reads: "The period of military service shall not be included in computing any period now or hereafter to be limited by any law * * * for the bringing of any action or proceeding in any court * * * by or against any person in military service * * * nor shall any part of such period which occurs after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax, or assessment."

In State ex rel. Com'rs of Land Office v. Wilkin, supra, the court held that while Wilkin had no defense to the mortgage indebtedness, his willingness and ability to pay such indebtedness constituted a defense against the foreclosure of the mortgage, that the right to redeem was a defense within the meaning of § 1035, supra, and that Wilkin, under the facts averred in his motion and the amendments thereto, was entitled to have the judgment vacated, the Sheriff's deed cancelled and the order of confirmation vacated, and to redeem the land from the mortgage.

Three questions are presented:

(1) Was Shell a bona fide purchaser of the three oil and gas leases?

(2) Was Shell an indispensable party to the proceeding to vacate the judgment and order of confirmation and to cancel the Sheriff's deed?

(3) Is Wilkin precluded by ratification or estoppel from challenging Shell's title to the three oil and gas leases?

I.  *Was Shell A Bona Fide Purchaser?*

■ A party plaintiff to an action who obtains a judgment therein and purchases at a judicial sale made under such judgment is not a "purchaser in good faith" within the meaning of that phrase in 12 Okl.St.Anno. § 176, and if the judgment is vacated for

error, irregularity, or fraud, the title of such purchaser fails.[3] The defeasible quality of the title acquired by such a purchaser is engrafted upon it by operation of law. If such a purchaser conveys his title to another, the vendee is charged with notice, with respect to which he may not assert ignorance, that his vendor's title is defeasible, that his vendor is not a purchaser in good faith under § 176, supra, and that if his vendor's title fails, by reason of the reversal or vacation of the judgment, the title acquired by him, as vendee, will also fail.[4]

In Harjo v. Johnston, 187 Okl. 561, 104 P.2d 985, a party to a partition suit purchased land of Harjo, a minor, at a sale made under the judgment entered in the partition suit. That judgment was not void on its face, but, as in the instant case, was voidable for extrinsic fraud,[5] by means of which the judgment was obtained. Harjo brought an action against the party purchaser's vendees to vacate the judgment and sale made thereunder and to cancel the deed to the purchaser's vendees. The court held that neither the original purchaser nor his vendees were purchasers in good faith; that the defeasible quality of the original purchaser's title was engrafted thereon by operation of law; that his vendees were chargeable with knowledge of the defeasible quality of the original purchaser's title and could not assert ignorance thereof in defense of their claim of title, and that the vacation of the judgment would defeat the title of the original purchaser and his vendees. The court further held that in such a situation it is immaterial whether the judgment is reversed or vacated. The hold-ing in the Harjo case is in accord with the weight of authority.[6]

Shell took the three oil and gas leases with notice that the only service of process on Wilkin in the foreclosure suit was by publication in a newspaper, that the judgment in the foreclosure suit might be vacated by a proceeding brought by Wilkin within three years after the entry of the judgment in the foreclosure suit for irregularities or for extrinsic fraud, that the title of the State was defeasible, and that if the title to the State failed, by reason of the vacation of the foreclosure judgment and the order of confirmation and cancellation of the Sheriff's deed, Shell's title would also fail.

We conclude that Shell was not a bona fide purchaser.

## II. *Was Shell An Indispensable Party?*

"Lis pendens" literally means a pending suit.[7] The doctrine of lis pendens may be defined as the jurisdiction, power, or control which the court retains over property involved in an action, pending the continuance of such action.[8]

One who, with notice of a pending action, purchases, from a party thereto, land involved in the action, where the court has jurisdiction of the subject matter and of the person of the party from whom such land is acquired, takes subject to the rights of the parties to the litigation as finally determined by the judgment or decree in such action.[9]

Such a purchaser takes subject to the statutory power of the court to open a

3. Morgan v. City of Ardmore, 182 Okl. 542, 78 P.2d 785, 788, overruled as to a part not here material in City of Bristow ex rel. Hedges v. Groom, 194 Okl. 486, 151 P.2d 936, 939; Harjo v. Johnston, 187 Okl. 561, 104 P.2d 985, 996; Arnold v. Joines, 50 Okl. 4, 150 P. 130, 134.

4. Harjo v. Johnston, 187 Okl. 561, 104 P.2d 985, 995–997; Morgan v. City of Ardmore, 182 Okl. 542, 78 P.2d 785, 788.

5. The false affidavit made and filed by an attorney for the State in the foreclosure suit.

6. See Note, 29 A.L.R. p. 1071, at pages 1078 et seq., cited in Harjo v. Johnston, 187 Okl. 561, 104 P.2d 985, 996, and

Morgan v. City of Ardmore, 182 Okl. 542, 78 P.2d 785, 788; and the leading case of Marks v. Cowles, 61 Ala. 299, cited with approval in Morgan v. City of Ardmore, supra.

7. Intermediary Finance Corp. v. McKay, 93 Fla. 101, 111 So. 531; Moore v. Zelic, 338 Ill. 583, 170 N.E. 664, 666.

8. Commonwealth ex rel. Kelley v. Kelley, 322 Pa. 178, 185 A. 307, 310; Intermediary Finance Corp. v. McKay, 93 Fla. 101, 111 So. 531.

9. Moore v. Zelic, 338 Ill. 583, 170 N.E. 664, 666; Brockman v. Roberts, 89 Okl. 59, 213 P. 545, 546.

default judgment resting on constructive service.[10] While the Oklahoma Supreme Court, so far as we are advised, has not passed directly upon the question of whether an action continues to pend within the doctrine of lis pendens, where the judgment was obtained against a party without other service than by publication in a newspaper, until the time within which such judgment may be vacated under § 176, supra, it has held generally that lis pendens continues through the time within which an appeal, writ of error, or other action may be taken to review the judgment.[11]

Where the judgment creditor purchases at the execution sale of land and transfers his title to another during the pendency of the action in which the judgment was rendered, the doctrine of lis pendens applies to the vendee of such purchaser,[12] and where the plaintiff in a mortgage foreclosure suit purchases at the foreclosure sale and transfers his title to another during the pendency of the foreclosure suit, the doctrine of lis pendens applies to the vendee of such purchaser.[13]

Wilkin could not challenge Shell's title under the three oil and gas leases until he had obtained the vacation of the judgment and order of confirmation and the cancellation of the Sheriff's deed. He could only redeem from the State. While, upon proper notice to Shell, he might have asked for relief against Shell in the proceeding he instituted in the foreclosure suit,[14] since Shell was a purchaser pendente lite, he was not required to do so.[15] Wilkin sought no relief against Shell in the proceeding he instituted in the foreclosure suit. Shell could

not challenge the right of Wilkin as against the State to have the foreclosure judgment and order of confirmation vacated and the Sheriff's deed cancelled and to redeem the land.

The motion and amendments thereto filed by Wilkin in the foreclosure proceeding disclosed that Shell had acquired the three oil and gas leases from the State pendente lite. The Supreme Court of Oklahoma apparently did not regard Shell as an indispensable party to the proceedings brought by Wilkin.

We conclude, for the reasons above stated, that Shell was a purchaser pendente lite and was not an indispensable party to such proceedings.

This does not mean that Shell may not, in the instant case, assert that it acquired the three oil and gas leases as a bona fide purchaser for value, and that Wilkin is precluded from challenging Shell's title thereto by reason of ratification or estoppel.[16]

The proceedings instituted by Wilkin in the foreclosure suit clearly constituted a direct, and not a collateral, attack upon the foreclosure judgment and order of confirmation.

Under 12 Okl.St.Anno. § 760, and 46 Okl. St.Anno. § 4, Wilkin was entitled to redeem the land during a period of six months from the date of the foreclosure judgment.[17]

50 U.S.C.A.Appendix, § 525, if literally construed, would apply only to a redemption period after a sale of land to enforce an obligation, tax, or assessment. But, in Le Maistre v. Leffers, 333 U.S. 1,

10. Glaze v. Johnson, 27 Tex.Civ.App. 116, 65 S.W. 662, 664; Martin v. Gilmore, 72 Ill. 193, 199, 200; Texas Co. v. Dunlap, Tex.Com.App., 41 S.W.2d 42, 43, 44; Gay v. Parpart, 106 U.S. 679, 696, 697, 1 S.Ct. 456, 27 L.Ed. 256.

11. Stuart v. Coleman, 78 Okl. 81, 188 P. 1063, 1065, 10 A.L.R. 411.

12. Martin v. Gilmore, 72 Ill. 193, 198–200; DiNola v. Allison, 143 Cal. 106, 76 P. 976, 978, 65 L.R.A. 419; Marks v. Cowles, 61 Ala. 299, 303–309. See cases cited in Notes 3 and 4, ante.

13. Texas Co. v. Dunlap, Tex.Civ.App., 41 S.W.2d 42, 43, 44; Glaze v. Johnson, 27

Tex.Civ.App. 116, 65 S.W. 662, 664; Turner v. Edmonston, 210 Mo. 411, 109, S.W. 33, 35–36.

14. Swartz v. Fariss, 181 Okl. 115, 72 P.2d 738, 739.

15. Mellen v. Moline Malleable Iron Works, 131 U.S. 352, 370, 371, 9 S.Ct. 781, 33 L.Ed. 178.

16. Swartz v. Fariss, 181 Okl. 115, 72 P.2d 738, 739.

17. Miller v. Farmers National Bank of Oklahoma City, 94 Okl. 101, 221 P. 71, 73.

68 S.Ct. 371, 373, 92 L.Ed. 429, the court said that the statute should be construed "with an eye friendly to those who dropped their affairs to answer their country's call." That case involved a proceeding for the sale of land for delinquent taxes. A certificate of sale was issued in the proceeding. The issuance of the certificate started the running of a two-year period for redemption, but did not pass title to the purchaser. The purchaser could only acquire title through a tax deed issued to him after the expiration of the period for redemption. The court held that the period the landowner was in the military service should not be included in computing the period for redemption.[18] In the Le Maistre case the issuance of the certificate of sale to the purchaser was a step in the proceedings to sell the land to enforce the tax obligation, which step started the running of the period for redemption, but passed no title to the purchaser. In the instant case, the judgment of foreclosure and order of sale was a step in the foreclosure proceedings to sell the land to satisfy the mortgage indebtedness. It, likewise, started the running of the Oklahoma period for redemption. While the question is not free from doubt, we are of the opinion there is no substantial difference between a period for redemption which follows a judgment and order of sale and a period for redemption which follows an inchoate sale. We think it was the intent of Congress that the period of military service should not be included in computing any period provided by law for the redemption of land in a proceeding instituted to sell the land to enforce an obligation, tax, or assessment. It follows that Wilkin was entitled to redeem the land from the State.

Shell took the three oil and gas leases involved herein and developed the area adjacent thereto, charged with notice of Wilkin's right to redeem and that its title to such leases would fail if Wilkin redeemed the land.[19] Upon the redemption of the land by Wilkin, Shell's title to such leases failed, unless Wilkin is precluded in challenging Shell's title because of ratification or estoppel.

## III. *Ratification and Estoppel.*

We have said that Shell took the three oil and gas leases charged with knowledge of the defeasible quality of the State's title and subject to the right of Wilkin to redeem. Wilkin acted promptly to assert his rights upon his return from military service. He filed his motion for relief under 12 Okl.St.Anno. § 176, within the three-year limitation fixed by such section. He redeemed promptly after his rights were established by the decision in State ex rel. Com'rs of Land Office v. Wilkin, 202 Okl. 177, 211 P.2d 509. In May, 1949, he refused to accept delay rentals from Shell.

The only possible basis for a claim of ratification or estoppel was the prayer in the motion filed by Wilkin in the foreclosure suit, that the State account for the "rents and other moneys received for, from or on account of said land." Wilkin at no time requested that the bonuses and delay rentals be credited on the mortgage debt, and when the State did account for the bonuses and delay rentals, Wilkin objected to their inclusion in the accounting and prayed that they be expunged therefrom and not credited on the mortgage debt. The state court entered an order in the foreclosure proceeding adjudging that the bonuses and delay rentals should not be

18. In the Le Maistre case, 333 U.S. at page 4, 68 S.Ct. at page 372, the court said: "The Florida procedure is said to be not covered by § 205 since title passes only on issuance of the deed, which ends the period of redemption. We do not think § 205 deserves such a technical reading. The provision in question was added in 1942 to remedy what this Court had held to be a casus omissus in a preceding Act. Ebert v. Poston, 266 U.S. 548, 554, 45 S.Ct. 188, 190, 69 L.Ed. 435. Its language does not compel the narrow reading that is suggested; and

the spirit of the amendment repels any such restriction. It covers 'any period * * * provided by any law for the redemption of real property sold or forfeited,' etc. We see neither in that language nor in the legislative history of the provision any purpose to restrict its application to cases where redemption follows passage of title."

19. Illinois Nat. Bank of Springfield v. Gwinn, 390 Ill. 345, 61 N.E.2d 249, 253, 159 A.L.R. 468.

credited on the mortgage debt, but that they should be paid over to the clerk of the court, subject to the further order of the court. Merely asking the State to account for the bonuses and delay rentals was not, we think, inconsistent with the assertion by Wilkin that the title to Shell's three oil and gas leases was defeasible. It merely brought the fund into court and made it available to Shell in the event the title to its three oil and gas leases failed. If the title to Shell's three oil and gas leases failed, it would be entitled to the return of the bonuses and delay rentals.[20] While Wilkin's position may not have been free from doubt until he affirmatively objected to the inclusion of the bonuses and delay rentals in the accounting and to the crediting thereof on the mortgage debt, the record is devoid of any evidence that Shell, in the interim, acted to its detriment in the belief that Wilkin had ratified its three oil and gas leases.

In some jurisdictions the mere commencement of an action is held to constitute an election. The more liberal rule, followed in Oklahoma,[21] is that an election, to be conclusive, must be efficacious, to some extent at least, and that the mere bringing of an action does not constitute an election if no advantage has been gained by the plaintiff and the adverse party has not changed his position or has not been otherwise prejudiced.

Here, there was no adjudication that the bonuses and delay rentals received by the State should be credited on the mortgage debt. The final adjudication was that they should not be so credited. There is no evidence that Shell, at any time, acted to its detriment in the belief that Wilkin had elected to ratify its three oil and gas leases. We conclude that Wilkin did not elect the remedy of having the bonuses and delay rentals credited on the indebtedness due the State.

Since there is no evidence that Shell at any time relied or acted upon the fact that Wilkin prayed for an accounting of the bonuses and delay rentals, Wilkin is not estopped to challenge the validity of Shell's three oil and gas leases.[22]

The judgment is reversed and the cause is remanded with instructions to enter a judgment in accordance with the views herein expressed.

HUXMAN, Circuit Judge (concurring especially).

50 U.S.C.A.Appendix, § 525 in clear language provides that the time spent in military service shall not be included in computing the time during which property may be redeemed from sale in any proceeding for the enforcement of any obligation, tax or assessment. Stated otherwise, entry into military service stops the running of any period of redemption. It does not begin to run again until discharge therefrom. Wilkin thus had the right to redeem when he returned from the service.

When Wilkin redeemed, title to the property was reinvested in him. Shell's title failed with the failure of the title of its grantor, the State of Oklahoma. This is so because Shell was not, and under the undisputed facts in the record, could not become a bona fide purchaser for value without notice. It was bound to take notice and have knowledge of the law and was thus bound to know that if Wilkin was in the service he had the right to redeem upon return therefrom and, if he did, its title would fail with the ending of the title of his grantor. Since this effectively disposes of the controversy there is no need to interpret or rely upon Harjo v. Johnston, 187 Okl. 561, 104 P.2d 985.

The Harjo case is a controversial one. It was decided by a sharply divided court. It contains a strong dissenting opinion, which has much to commend it. The syllabus of the court, which in Oklahoma states the law, limits its application to minor's interest. That this was the interpretation of both the majority and minority is clearly indicated in both opinions. There

---

20. Brunson v. Commissioners of Land Office, 145 Okl. 219, 292 P. 562, 563.

21. Lester v. Fields, 171 Okl. 442, 43 P.2d 87, 89; Sauer v. Bradley, 87 Okl. 277, 210 P. 726, 727.

22. See Colvert Ice Cream & D. P. Co. v. Citrus Products Co., 179 Okl. 285, 65 P.2d 455, 458.

is nothing in the majority opinion making it apparent whether Oklahoma will ultimately apply its doctrine to all judicial sales and, since the determination of that question is not essential to a complete adjudication of this controversy, I prefer to leave it for ultimate decision with the Oklahoma Court.

On Rehearing.

PHILLIPS, Chief Judge:

Judge Murrah and I adhere to the views expressed in our former opinion. Judge Huxman adheres to the views expressed in his concurring opinion.

On July 7, 1937, C. C. Webb and Ruby I. Webb, by mineral deed, conveyed an undivided one-half interest in the minerals in the land involved in this action to W. E. Hocker. On July 8, 1938, Hocker, by mineral deed, in which his wife joined, conveyed an undivided one-fourth interest in the minerals in the land to J. G. Scott. On September 21, 1939, W. E. Hocker died testate. By his will he devised all of his interest in the minerals in the land to Martha M. Hocker, his widow, and Walter E. Hocker, Jr., his son. The other pertinent facts are set forth in our former opinion and need not be reiterated here.

In our former opinion we did not expressly pass upon the rights of Shell Oil Company under its oil and gas leases with respect to the one-half interest in the minerals acquired by Scott, Martha M. Hocker, and Walter E. Hocker, Jr. That issue was fully argued in the briefs and orally on rehearing and we are requested to decide it.

We deem it unnecessary to determine whether the redemption by Wilkin as against the State of Oklahoma constituted a redemption not only of the interest owned by Wilkin, but also of the one-half interest in the minerals owned by Scott, Martha M. Hocker, and Walter E. Hocker, Jr. Neither would it be appropriate for us to decide that question, because the State of Oklahoma is not a party to this proceeding. Our former opinion was predicated upon the proposition that as against Wilkin, Shell was not a purchaser in good faith, and took its leases subject to Wilkin's right to redeem, and that upon the redemption by Wilkin, Shell's leases failed as to the one-half interest in the minerals owned by Wilkin. Martha M. Hocker, Walter E. Hocker, Jr., and Scott were personally served with process in the foreclosure suit and interposed no defense therein. No fraud was practiced on them by the State of Oklahoma. The foreclosure proceedings with respect to their one-half interest in the minerals were in all respects valid and regular and their right to redeem their one-half interest in the minerals expired at the expiration of six months from the date of the judgment in the foreclosure proceeding. As to the one-half interest in the minerals owned by Martha M. Hocker, Walter E. Hocker, Jr., and Scott, Shell was a bona fide purchaser for value and took its leases from the State without notice of any defect in the title acquired by the State to such one-half interest.

Accordingly, we conclude that Shell's leases are valid and binding as to the one-half interest in the minerals owned by Martha M. Hocker, Walter E. Hocker, Jr., and Scott, and that any right that inured to them by virtue of Wilkin's redemption is subject to Shell's leases.

The judgment is reversed and the cause is remanded with instructions to enter a judgment in accordance with the views expressed in our former opinion and in this opinion on rehearing.