**W. L. HART and Intervenor, H. E. Blalock,
Plaintiffs in Error,**

**v.**

**O. W. PHARAOH, Intervenor, Defendant
in Error.**

**No. 38686.**

Supreme Court of Oklahoma.

Feb. 28, 1961.

Hart & Burger, Pauls Valley, Looney, Watts, Looney & Nichols, Anna B. Otter, Oklahoma City, for plaintiffs in error.

R. B. Garvin, Pauls Valley, for defendant in error.

HALLEY, Justice.

W. L. Hart filed this action in the District Court of Garvin County on August 23, 1957, to partition and quiet title thereto, certain land in that county in which he alleged that he was the owner of an undivided one-sixth interest, and naming numerous defendants who are alleged to own various interests therein. Among the defendants were minors and full-blood Indians.

On September 26, 1958, the court rendered judgment for those persons found to own an interest in the surface rights and quieting their title thereto, and found that the land could not be partitioned in kind and Commissioners were appointed to partition the land. The Commissioners appointed, reported that the land could not be partitioned in kind and placed a value thereon of $1;250.

October 3, 1958, W. L. Hart, plaintiff, filed his election to take the land at the appraised value. On October 21, 1958, the court found that W. L. Hart had filed an election to take the land at the appraised value, and that he was the only one who had filed such election. The court ordered the sheriff to execute and deliver to W. L. Hart a deed conveying all of the land involved, and quieted title thereto in W. L. Hart.

October 30, 1958, O. W. Pharaoh intervened and moved the court to vacate its judgment of October 21, 1958, whereby the court had directed the sheriff to execute a deed to W. L. Hart and permit the intervenor to file an election to take the land at the value placed thereon, and to vacate the sheriff's deed conveying the land to W. L. Hart. He alleged that on March 6, 1958, he acquired title to an undivided ⅙th interest in land here involved, and on July 14, 1958, he filed in this Court his motion for leave to intervene, which was granted, and on the same day he caused to be filed his plea of intervention in the form of an answer and cross-petition, prepared and filed by attorney, Sam J. Goodwin, who on March 18, 1958, had been appointed by the court guardian ad litem for certain minor defendants, and on March 18, 1958, said attorney had filed an answer herein for intervenor defendants.

Intervenor Pharaoh alleged that he had relied upon Sam J. Goodwin to represent him and keep him advised as to the progress of the action; that prior to the filing of the Commissioners' report the attorney for plaintiff advised Sam J. Goodwin that plaintiff and this intervenor had an understanding with reference to said property, whereby Sam J. Goodwin was lulled into a false impression that this intervenor did not desire to file his election to take the property at the appraised price, and as a result did not advise intervenor of the filing of the return and report of the Commissioners; that while said attorney did not withdraw as attorney for this intervenor, his actions prevented intervenor from exercising his right to file an election to take the land at the appraised price; that he was not advised of the report of the Commissioners until late in the afternoon of October 29, 1958. He further claimed that all of the conduct of Hart and his counsel amounted to "unavoidable casualty and misfortune" which would justify the court in setting aside the judgment in partition and invalidating and canceling the sheriff's deed issued under the authority of the partition judgment. Phar-aoh asked permission to file his election to take the property at its appraised price.

On November 14, 1958, the trial court vacated the judgment of October 21, 1958, and canceled the sheriff's deed issued pursuant thereto. Hart and Blalock appealed.

The court found that no fraud was practiced by either party, but found that H. E. Blalock was not a bona fide purchaser, because he had purchased the property from W. L. Hart within the term of court in which the partition judgment was rendered, and was charged with notice that Hart's title was defeasible, and because the court refused to require Pharaoh to tender money into court.

The plaintiffs in error have submitted three propositions, the first of which is as follows:

"Vacation judgment of trial court constituted arbitrary abuse of discretion, not based upon established principles of law, nor based upon facts showing unavoidable casualty or misfortune, but rather pure negligence on part of attorney for Pharaoh, imputable to Pharaoh, in face of conclusive evidence Pharaoh and his attorney had notice of final hearing on partition confirming sale and approving sheriff's deed, and in face of conclusive evidence of rights of H. E. Blalock, as bona fide purchaser subsequently accruing."

A careful study of the record and briefs in this case convinces us that the principal question to be determined is did Pharaoh's original attorney, Mr. Goodwin, so mislead Mr. Pharaoh as to justify the trial court in vacating the judgment granting W. L. Hart the right to take the land at the appraised price, as to deprive Mr. Pharaoh of his day in court and amount to such an unavoidable casualty or misfortune as to justify the court in entering the judgment vacating the judgment rendered?

It is admitted that Mr. Goodwin represented Mr. Pharaoh as well as others in this case. He testified as follows:

"Q. Did you appear on the date that judgment (September 26, 1958) was

taken or signed by this Court? A. No, sir.

"Q. Did you have a conversation with Mr. Hart at the time you signed your name there? A. I did, sir.

"Q. Would you tell the Court the nature of that conversation? A. Yes, sir. Mr. Hart told me that he wanted to take judgment and he wanted me to okay the Journal Entry, and I said 'Fine. Have you taken care of my clients, particularly my Intervenor?' And he said, 'I have', and as to whether I read the entire judgment or not, I do not know; because he said that Pappy—now I could be in error, but in substance he said, 'Pappy and Pharaoh have worked out a settlement in this matter, or an agreement'—on or the two words.

"Q. Who did he refer to, if you know, when he said Pappy? A. Well, he was referring to the Plaintiff, W. L. Hart, his father, in this Petition, or at least, that's who I assumed he was referring to, because it is his father.

"Q. Then after Mr. Hart made that statement to you, did you do anything further? A. I did not. As far as I was concerned, I thought that the agreement had been worked out to their satisfaction, and I knew as to the judgment as to the minors and as to Abbie Gains was satisfactory, so I took no further steps in the case whatsoever.

"Q. Did you abandon this case as far as O. W. Pharaoh was concerned? A. Yes, sir.

"Q. Did you advise Mr. Pharaoh? A. I did not, sir."

* * * * * *

"Q. Mr. Goodwin, after the conversation with Mr. Hart which you have heretofore stated with reference to a settlement or an agreement with reference to this land between Plaintiff and Mr. Pharaoh, did you at any time after that proceed in this action as attorney for O. W. Pharaoh? A. I did not.

"Q. Did you advise Mr. Pharaoh of your withdrawal as such attorney representing him in this matter? A. I did not. May I make an explanation?

"Q. Yes, sir. A. At the time that Mr. Hart informed me that Mr. Pharaoh's interest, and Pappy, or his father's, interest, that he had a recent agreement on it, so far as I was concerned, that was correct, and my further running up expense for Orban Pharaoh electing to take or anything else would be surplus, because it had been effected as he had advised me.

"Q. You relied on the statement? A. I did, and I made no further steps in it with reference to Orban Pharaoh whatsoever. As I said a while ago, I learned about it only when he called me on the telephone. I believe that was the 29th day of October, (1958) sometime in the morning, I know. That's the first time I learned of it. I believe that is the correct date."

From the foregoing and further testimony in this case, it is perfectly clear that both Mr. Goodwin, the attorney, and his client, Pharaoh, were misled by statements made to Goodwin as to Mr. Hart and Mr. Pharaoh having reached an agreement as to this partition proceeding. This was an unavoidable casualty.

Section 1031, 12 O.S.1951, provides in part as follows:

"The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made: * * *

"Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order.

* * * * * *

"Seventh. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending."

Since the court found that no fraud was involved, the plaintiffs in error must rely upon 12 O.S.1951 § 1031, subd. 7, which gives to the trial court power to vacate or

modify its own judgment or orders for "unavoidable casualty or misfortune, preventing the party from prosecuting or defending."

Intervenor Pharaoh cites a number of Oklahoma cases in support of his contention that Pharaoh's attorney, Goodwin, had abandoned his case without notice, and that such abandonment under the circumstances, justified the trial court in vacating the judgment. W. L. Hart and his grantee have also cited numerous decisions which they claim show that the court erred in vacating the judgment.

In McLaughlin et al. v. Nettleton et al., 69 Okl. 74, 183 P. 416, it is said:

"An attorney, who has been employed to conduct legal proceedings, undertakes to conduct them to their determination, and cannot abandon the services of his client without cause and upon reasonable notice."

In Bearman et al. v. Bracken et al., 112 Okl. 237, 240 P. 713, 716, we find the following:

"We cannot escape from the conclusion that the plaintiff in error was a victim of circumstances over which he had no control, due to the unforeseen withdrawal of his codefendant, Bearman, from the case, of which he had no notice, as the result of which he was prevented from having his day in court."

Again in Grayson et al. v. Stith, 196 Okl. 477, 165 P.2d 984, it is said:

"The act of an attorney in abandoning his client's case without notice to the latter, and in permitting a default judgment to be rendered against his client without his knowledge or consent, constitutes unavoidable casualty or misfortune under the seventh subdivision of section 556, O.S. 1931, 12 O.S.1941 § 1031, subd. 7.

\* \* \* \* \* \*

"This court has many times held that the neglect of an attorney is imputable to his client and that a judgment will not be set aside or vacated when ob-

tained or rendered because of the neglect or inattention of an attorney. \* \* \* But this court has repeatedly held that the act of an attorney in abandoning his client's case and withdrawing therefrom without notice to his client, thus permitting default judgment to be rendered against his client, without the client's knowledge and consent, was unavoidable casualty and misfortune which would justify the setting aside of such judgment. \* \* \*"

▮ This Court also held in Davidson v. Pickens, Okl., 261 P.2d 872, 873, that:

"The district courts of this state have a wide and extended discretion in opening judgments and in setting aside or modifying proceedings had in said courts if done at the term in which the judgment or proceedings are had when all the parties are present before the court and no advantage is taken of either party."

▮ In the more recent case of Hamburger et al. v. Fry, Okl., 338 P.2d 1088, 1089, it was held that:

"Where a default judgment is rendered against defendants and they file a motion to vacate within the term, the ruling thereon should be based upon judicial discretion in the interest of substantial justice and if the motion is overruled and all of the circumstances demonstrate that it could well have been sustained without serious injustice, and that its denial results in serious injustice, and constitutes an abuse of judicial discretion, this court on appeal will reverse."

When we consider the testimony above quoted and the decisions of this Court, we are forced to the conclusion that the action of the court in vacating the decree of partition, dated October 21, 1958, was valid. Mr. Pharaoh was advised of this judgment on October 29, 1958, and he filed his motion to vacate on October 30, 1958. This was not only within the same term at which the judgment was rendered but within the time

that a motion for a new trial could have been filed.

The judgment vacated was dated October 21, 1958. W. L. Hart quit-claimed to intervenor, H. E. Blalock on October 24, 1958, which was only three days after W. L. Hart acquired his title, and within the time allowed for the filing of motion for a new trial.

For their second proposition Hart and Blalock contend that H. E. Blalock is a bona fide purchaser and that Pharaoh and his attorney had due notice of the hearing on partition, confirmation of sale and sheriff's deed and the trial court found that no fraud was practiced by either Hart or Blalock.

Pharaoh countered with the proposition that Blalock is a purchaser pendente lite and under the doctrine of lis pendens Blalock could not be a bona fide purchaser and his title must stand or fall with the title of W. L. Hart.

Section 180, 12 O.S.1951, is as follows:

"When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's title; * * *."

The chief purpose of lis pendens is to keep the subject matter involved within the power of the court until final judgment is rendered so that such judgment may be effective. Guaranty State Bank of Okmulgee v. Pratt, 72 Okl. 244, 180 P. 376.

H. E. Blalock acquired whatever interest he has by quitclaim deed from W. L. Hart and could acquire no greater interest than his grantor W. L. Hart, had. In Harper v. Aetna Building & Loan Ass'n, 88 Okl. 128, 211 P. 1031 the rule was announced in the second paragraph of the syllabus as follows:

"A purchaser of real property from a party to a pending action is bound by the judgment rendered in such action against his grantor and acquires no greater right than his grantor. This rule applies without regard to the form of the action or whether the decree is erroneous."

The same rule was adhered to in Wilkin v. Shell Oil Company, 10 Cir., 1951, 197 F.2d 42, 43. In the sixth paragraph of the syllabus of that case, it was said that:

"Generally, under Oklahoma law, lis pendens continues through time within which appeal, writ of error, or other action may be taken to review judgment."

The Circuit Court cited as authority for its holding, Stuart v. Coleman, 78 Okl. 81, 188 P. 1063, 10 A.L.R. 411, wherein this Court said that the great weight of authority is to the effect that the notice of lis pendens continues through the time within which an appeal, writ of error or other actions may be taken to review the judgment. The court quotes from 34 Am. Jur., Lis Pendens, Section 33, p. 388, as follows:

"It seems to be settled that one who makes a purchase during the time allowed for moving for a new trial or for vacation of a default takes it subject to the ruling on the motion."

We conclude that H. E. Blalock is not a bona fide purchaser under the doctrine of lis pendens.

We find no merit in the third contention of Hart and Blalock that the trial court erred in refusing to require Pharaoh to tender moneys into court to protect amounts previously deposited by Hart and Blalock.

It is not disputed that the money paid into court is still in the court clerk's office. The question here raised is within the sound discretion of the court. In Pettis v. Johnston, 78 Okl. 277, 190 P. 681, 682, it was said:

"A court of equity may impose such conditions to the granting of relief against a judgment not void on its face as appear equitable under the circumstances of each particular case, and also as provided for by section 5272, Rev.Laws 1910."

Clearly under the above case and 12 O.S. 1951 § 1036, it was discretionary with the trial court whether a tender or bond should be required here.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON and BERRY, JJ., concur.

JACKSON and IRWIN, JJ., concurring specially.

JACKSON, Justice (concurring specially).

I agree with the result reached by the majority opinion although I am of the further opinion that the decisive law is set forth in the partition statutes 12 O.S.1951 §§ 1501–1516, as amended in 1953.

In this case there is evidence sufficient for the trial court to conclude that Hart's lawyer caused Pharaoh's lawyer to believe that Hart and Pharaoh had worked out their differences and that it would not be necessary for Pharaoh's lawyer to remain active in the case. While it is obvious from the evidence and the trial court's finding that there was no fraud committed by Hart's lawyer it is apparent that there was a misunderstanding by the attorneys which was no doubt responsible for Pharaoh's failure to elect to take the property within the ten day period allowed by 12 O.S.1951 § 1512, as amended in 1953.

The evidence tends to show that the appraisement of $1,250 was too low. Pharaoh had paid $250 for a one-sixth interest in this property on the 10th day of June, 1958. This indicates that Pharaoh would value the property at $1,500. Hart paid $1,250 for the property on October 21, 1958, and sold it three days later to Blalock for $1,325.91.

Under the foregoing circumstances I am of the opinion that under the provisions of 12 O.S.1951 §§ 1510 and 1516, and our decision in Hargis v. Hargis, 181 Okl. 377, 73 P.2d 1129, it was within the sound judicial discretion of the trial court to set aside

its order of October 21, 1958, to vacate the deed, and to direct the appraisers to make and return a new appraisement.

For the reasons assigned by the majority and those expressed herein I concur.

I am authorized to say that IRWIN, J., concurs in the views herein expressed.