**ESSELEN ASSOCIATES, INC., Appellant,**

v.

**CRYSEN/MONTENAY ENERGY COMPANY, Debtor–Appellee.**

**In re MONTENAY ENERGY COMPANY, Debtor,**

**In re CRYSEN PETROLEUM TRADING, INC., Debtor.**

No. 89 Civ. 2616(MP).

United States District Court, S.D. New York.

Aug. 10, 1989.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City by Anthony J. Pruzinsky, for appellant.

Fox & Horan, New York City by John R. Horan, Richard N. Chassin, for debtor-appellee.

MILTON POLLACK, Senior District Judge.

Esselen Associates, Inc. appeals from an order of the Bankruptcy Court which: held Esselen willfully violated the automatic stay of 11 U.S.C. § 362(a); permanently enjoined Esselen from prosecuting a civil action pending in the United States District Court for the Eastern District of New York against Con Edison; and imposed sanctions against Esselen under 11 U.S.C. § 362(h).[1] The Bankruptcy Court failed to make express findings of fact and conclusions of law as required by the Bankruptcy Rules. Further, the conclusions implicit in its order are plainly erroneous under applicable law. The Bankruptcy Court is accordingly reversed and its order vacated for the reasons set forth below.

*Background*

The Bankruptcy Court's order, and this appeal, arise from a dispute between Crysen/Montenay Energy Company (hereinafter "Crysen" or the "Debtor") and Esselen over who has a right of action against Con Edison. A claim for relief against Con Edison, if one exists, in turn arises from two separate pre-bankruptcy contracts, between Crysen and Con Edison in the first instance, and between Crysen and Esselen in the second.

On November 1, 1985, Crysen and Con Edison entered into a long-term agreement for the sale and purchase of fuel oil (the "Con Edison contract"). The parties to that contract did not expect that Crysen would supply the oil. Instead, Crysen would contract with a third party to deliver a shipload of oil as each installment became due, in effect acting as a commission broker for Con Edison's oil purchases. Under the terms of the Con Edison contract, the quantity of oil delivered with each installment was to be determined by an independent inspector, based on shore tank measurements.[2]

In January, 1986, Crysen contracted with Esselen to purchase oil laden on the vessel, O/B/O MARA, to be discharged into Con Edison's Hudson Avenue Terminal in New York Harbor (the "Esselen contract"). That contract as evidenced by a telex, provided "BUYERS SHORE TANKS TO DETERMINE QUANTITY.... INSPECTION: AT DISCHARGE BY AUTHORIZED INDEPENDENT INSPECTORS ..." It did not provide for any alternative measurement of the amount delivered.

On January 22 and 23, 1986, the MARA discharged its oil at the Hudson Avenue Terminal.[3] The independent inspector's report issued January 29, 1986 recommended that Esselen and Crysen use a ship delivered measurement of 113,256 bbls, rather than the shore tank measurement for the amount of oil because of a "serious discrepancy" between the two. Con Edison insisted the certificate be issued based on shore tank measurements. The certificate showing delivery of 99,719 bbls based on shore tank measurements was issued February 4, 1986. Con Edison paid Crysen, and Crysen in turn paid Esselen for 99,719 bbls of oil. Both denied any further liability.

Esselen pressed for payment for the "missing" 13,500 bbls of oil. Crysen denied receipt of the oil, and advised that any dispute over the quantity of oil delivered to the Hudson Terminal was a matter for Esselen and Con Edison to resolve. Esselen then filed a civil action against Crysen

---

1. The Bankruptcy Court's reference to 11 U.S.C. § 362(h) in support of its award of sanctions seems in error. That section provides an "individual injured by any willful violation of [the automatic stay] shall recover actual damages ..." Crysen, however, is a corporation and not an individual.

2. The Con Edison contract, however, does allow for an alternative measurement based on vessel gauging if measurement of the shore tanks is "unavailable."

3. The discharge of oil was halted before completion for reasons unrelated to this appeal.

in the United States District Court for the District of New Jersey, seeking to recover the price of the missing oil. Crysen filed for a petition for relief under chapter 11 of the Bankruptcy Code in the Southern District of New York, in June 1986. As a result, Esselen dismissed the New Jersey action and promptly filed a civil action against Con Edison in the United States District Court for Eastern District of New York. Crysen, as debtor in possession, filed an adversary proceeding in the Bankruptcy Court against Con Edison in January, 1988 seeking to recover the purchase price of the missing oil.

On several occasions the Debtor suggested to Esselen that its prosecution of the Eastern District action against Con Edison violated the bankruptcy automatic stay, 11 U.S.C. § 362(a). In January, 1989, the Debtor filed a motion to enforce the automatic stay against Esselen. The Bankruptcy Court held a hearing on the motion on February 15, 1989, and on February 27, 1989 entered an order: 1) finding that Esselen's commencement and continued prosecution of its direct action against Con Edison was a willful violation of 11 U.S.C. § 362(a); 2) permanently enjoining Esselen from prosecuting the civil action in the Eastern District of New York or commencing any other action which seeks recovery on that claim; and 3) providing for recovery of damages by Crysen under 11 U.S.C. § 362(h).

Neither the transcript of the February 15, 1989 hearing, nor the February 27 order contain specific findings of fact or conclusions of law on which the Bankruptcy Court based its ultimate determination enjoining Esselen and adjudging that it had violated the automatic stay. Notwithstanding that the order grants a permanent injunction and imposes sanctions against Esselen, it merely states: "Esselen's commencement and continued prosecution of the Eastern District Action after the filing of the petition for chapter 11 relief of Crysen/Montenay on June 27, 1986, are willful violations of 11 U.S.C. § 362." No further findings as to how Esselen's action against Con Edison falls within the acts proscribed by that section appear in the record on appeal.

### Analysis

The record presented on appeal is completely devoid of the findings of fact and conclusions of law which a court must make before entering an order of this type. Bankruptcy Rule 7052, applicable to the proceeding below through Bankruptcy Rule 9014, requires a bankruptcy court to make findings of fact and conclusions of law just as is required of a district court in actions tried without a jury by Fed.R.Civ.P. 52. Rule 52(a) provides in part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon ..."

The record on appeal contains no special findings on which a court could conclude as a matter of law that Esselen's claim for relief against Con Edison was property of the estate, or that Esselen's direct action against Con Edison was an attempt to obtain or exercise control over property of the estate. An order granting sanctions, in the form of costs and attorneys' fees, and containing a permanent injunction, is a serious matter and should not be entered based only on general impressions and conclusory discussions. Such an order requires the court to parse out the rights of the parties to the action in the disputed property. Further, the record in this case indicates that such a parsing out of the parties' rights would have revealed the error in the Bankruptcy Court's order.

Neither the transcript of the February 15, 1989 hearing, nor the February 27 order specify which subsection of 11 U.S.C. § 362 Esselen violated. The Debtor contends, and it appears, that the Bankruptcy Court based its order on an alleged violation of § 362(a)(3) which provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities of—

(3) any act to obtain possession of property of the estate or of property

from the estate or to exercise control over property of the estate;

■ Whether Esselen's pursuit of its action against Con Edison is a violation of the automatic stay depends on whether its claim for relief is "property of the estate." The stay prevents individual creditors from suing to enforce a right of action belonging to the corporation when that corporation is in bankruptcy. *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.1986). If, however, the right of action belongs to the creditor, it is not part of the estate and the stay does not apply. *See, Cumberland, Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.*, 79 B.R. 534, 540 (S.D.N.Y.1987).

■ The Bankruptcy Code, 11 U.S.C. § 541 broadly defines property of the estate. Property of the estate includes choses in action. *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129 (2d Cir.1984). Section 541(d), however, excludes from the estate:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

■ Federal law determines what property is "property of the estate." State law, however, determines the existence and nature of a debtor's interest, and correspondingly the estate's interest, in property. *Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88 (2d Cir.1989). Thus, to determine whether Esselen or Crysen owns the claim for relief against Con Edison we must look to state law.

Esselen did not contract with Con Edison, only with Crysen. Under the terms of that contract, it had a right to payment for oil delivered, based on shore tank measurements. Esselen's claim is basically that, at some point after entering Con Edison's system, but before reaching the shore tank for measurement, the oil was diverted, thus depriving Esselen of its right to payment from Crysen for that oil.[4] The Uniform Commercial Code provides for this situation. N.Y.U.C.C.Law § 2–722 states:

Where a third party so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract

(a) a right of action against the third party is in either party to the contract for sale who has title to or a security interest or a special property or an insurable interest in the goods; and if the goods have been destroyed or converted a right of action is also in the party who either bore the risk of loss under the contract for sale or has since the injury assumed that risk as against the other;

(b) if at the time of the injury the party plaintiff did not bear the risk of loss as against the other party to the contract for sale and there is no arrangement between them for disposition of the recovery, his suit or settlement is, subject to his own interest, as a fiduciary for the other party to the contract;

(c) either party may with the consent of the other sue for the benefit of whom it may concern.

The Official Comment to that section states, "[d]uring the period between identification and final acceptance (except in the case of revocation of acceptance) it is possible for both parties to have the right of action."

■ Pursuant to § 2–722, Esselen holds the claim against Con Edison for the contract price of the missing oil under the Esselen contract. As between Esselen and Crysen, Esselen bore the risk of loss, or at least assumed the risk of loss, as to the

---

4. Esselen also argues that it has a claim for relief under UCC § 2–401(4) which revests title in the seller when a buyer rejects or refuses to receive or retain goods. This argument has no merit. If either party has a claim for relief against Con Edison, it is because the missing oil was delivered to Con Edison. This is not a case where a buyer sent goods back or asked the seller to come pick them up. The real dispute is over the amount of goods (oil) delivered.

missing oil. Crysen, vis-a-vis Esselen, has continually denied receipt of the missing oil and all responsibility for payment. Esselen's claim against Con Edison is not property of the estate. Even if Crysen has a right to file an action for the loss under § 2–722, any recovery of the price of the missing oil under the Esselen contract would be held in trust for Esselen. Crysen holds only bare legal title, so that such a recovery would not be property of the bankruptcy estate under § 541(d). Thus, Esselen's prosecution of its direct action against Con Edison was not an act to obtain possession or exercise control over property of the estate.[5]

Crysen may very well have its own claim against Con Edison for commissions due on the missing oil. Unlike the Esselen contract, the Con Edison contract provides for the possibility of using ship-output rather than shore tank measurements. Crysen's interest, however, is at best a dual, severable interest from that of Esselen. The fact that the Debtor may also have a claim against Con Edison does not convert Esselen's action into property of the bankruptcy estate.[6]

Accordingly, the order of the Bankruptcy Court is reversed and the proceeding is dismissed, with costs to appellant. The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P.

SO ORDERED.

---

5. The Debtor cites *LTV Steel v. David Graham Co. (In re Chateaugay Corp.)*, 78 B.R. 713 (Bankr.S.D.N.Y.1987) as dispositive. The court there held a creditor of the estate in violation of the automatic stay for pursuing direct actions against the debtor's customers. That holding, however, was based on a determination that the claim for relief against the customers was owned solely by the debtor. Here, under state law Esselen owns a right of action separate from any right of the debtor's.

6. Esselen's prosecution of its civil action against Con Edison may impact on Crysen's claim for a commission on the missing oil. For example, a factual determination that the missing oil was not lost in Con Edison's facility might collaterally estop Crysen's claim for a commission. Notwithstanding this potential impact, Esselen's pursuit of its action does not clearly amount to an act to obtain possession of, or to exercise control over, property of the estate.