In re Edwin **BORISON**, LDV Oil, Inc., Centurion Oil, Inc., Amadeus, Inc., Optima Exploration, Inc., Olympus Limited Partnership, Debtors.

William J. **CONDREN** and Joseph Cornacchia, Plaintiffs,

v.

Lynn **HARRISON**, as Chapter 7 Trustee for the Estate of Edwin B. Borison, and Barbara Balaber–Strauss, as Chapter 7 Trustee for the Estates of LDV Oil, Inc., Centurion Oil, Inc., Amadeus, Inc., Darnoc, Inc., Optima Exploration, Inc., an Olympus Limited Partnership, Defendants.

Bankruptcy Nos. 94–B–43467(PCB), 94–B–43468(PCB), 94–B–43469(PCB), 94–B–43470(PCB), 94–B–43471(PCB), 94–B–43480(PCB), 94–B–43481(PCB).

Adversary No. 95–8852A.

United States Bankruptcy Court, S.D. New York.

March 18, 1998.

Gersten Savage Kaplowitz & Curtin, LLP By Douglas T. Tabachnik, New York City, for William J. Condren and Joseph Cornacchia.

Curtis, Mallet–Prevost, Colt & Mosle By Alan J. Brody, New York City, for Lynn P. Harrison, III as Chapter 7 Trustee for Edwin B. Borison.

Barbara Balaber–Strauss, P.C., White Plains, NY, for Barbara Balaber–Strauss as Chapter 7 Trustee for LDV Oil, Inc., et al.

## MEMORANDUM DECISION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PRUDENCE CARTER BEATTY,* Bankruptcy Judge.

This adversary proceeding was commenced by William J. Condron and Joseph Cornacchia (the "60% Claimants") for the purpose of obtaining a declaration that they are the owners of 60% of certain oil and gas property interests located in Oklahoma (the 60% interests hereafter are referred to as the "Property"), title to which is presently recorded in the names of one or more of the debtors.[1] They also seek to have the trustees deliver to them recordable title instruments. They seek this relief based on a judgment of the United States District Court for the Western District of Oklahoma (the "Oklahoma Judgment") issued shortly before the filing of these Chapter 7 cases.[2] They have now moved for summary judgment in their favor.

The two Chapter 7 trustees oppose the summary judgment motion on the grounds, principally, of their statutory status as a bona fide purchaser of real property under Bankruptcy Code ("Code") § 544(a)(3). The 60% Claimants respond that the notices

---

* Formerly known as Prudence Beatty Abram.

1. In addition to seeking the Property, the 60% Claimants had also requested that they be determined to have a valid security interest in the remaining 40% of the Oklahoma oil and gas interests. However, they have withdrawn that request since such relief was not sought in the complaint in this adversary proceeding.

2. The Oklahoma Judgment was rendered in the consolidated cases of *Darnoc, Inc. et al. v. William J. Condren et al.,* Case No. CIV–91–333–A, *William J. Condren, et al. v. Edwin Borison, et al.,* Case Nos. CIV–91–462–A and CIV–91–462–W (collectively, the "Oklahoma Action").

of lis pendens[3] they filed in 1991 at the commencement of the Oklahoma Action prevent the trustees from prevailing over their interest in the Property.

This court finds that there are no material facts in issue. Based on the court's conclusions of law which follow, this court holds that the 60% Claimants are entitled to judgment declaring they are the owners of the Property and directing that the trustees deliver recordable assignments of the Property of the 60% Claimants.

### STATEMENT OF UNDISPUTED FACTS[4]

*The Bankruptcy Case*

1. On July 22, 1994, Edwin B. Borison ("Borison") filed a voluntary petition under Chapter 7 of the Code. Voluntary petitions under Chapter 7 of the Code were also filed on that date by the following entities: LDV Oil, Inc., Centurion Oil, Inc., Amadeus, Inc., Darnoc, Inc., Optima Exploration, Inc. and Olympus Limited Partnership (collectively, the "Business Debtors").[5] The cases of Borison and the Business Debtors are being jointly administered.

2. Lynn P. Harrison, III was appointed the Chapter 7 trustee of the Borison estate and Barbara Balaber–Strauss was appointed the Chapter 7 trustee for the Business Debtors (together, the "Trustees").

3. Borison was involved in the promotion, acquisition, drilling and management of oil and gas opportunities in Oklahoma and operated certain related business ventures individually, through the Business Debtors or through other related entities either owned or controlled directly or indirectly by Borison or members of his family.

*The Notices of Lis Pendens and the Oklahoma Action*

4. In the Oklahoma Action the 60% Claimants sought to recover over $4 million they had given to Borison or the Business Debtors for investment in oil and gas properties.

5. The 60% Claimants alleged, *inter alia,* fraud, conversion and that Borison was the alter ego of each of the corporate defendants. The 60% Claimants sought relief in the form of money damages as well as seeking title to oil and gas property interests held by the defendants on the grounds that they belonged to the 60% Claimants.

6. In April and October 1991, the 60% Claimants filed notices of lis pendens of the Oklahoma Action. The notices of lis pendens were filed with the clerks of the various Oklahoma counties in which the oil and gas properties were located. The notices of lis pendens covered the entirety of the interests of Borison and the Business Debtors in the oil and gas properties and were not limited to the percentages which were ultimately awarded the 60% Claimants in the Judgment. The notices clearly identified the Oklahoma Action, including case name, number, and court, gave the date of filing of the Oklahoma Action and provided the legal description of the land affected, including the section number, township number, range number and county where it was located. Copies of the recorded notices of lis pendens were attached to the 60% Claimants' summary judgment motion and show the "filed" stamp of the respective county clerk as well as the location of the entry in the clerk's recordbook.

7. While the Trustees assert that the notices of lis pendens may have been defective in some respect, they have failed to identify any specific deficiency in the form of the

---

3. Lis pendens is a Latin term that means a suit pending.

4. All of the findings of fact are based on either undisputed facts from the bankruptcy case files or on the undisputed facts in the various papers submitted in connection with the motion for summary judgment.

5. The Business Debtors' petitions were signed by Craig Borison, Borison's son. The schedules in those cases state that Craig Borison was the

president, secretary, treasurer, director and 100% shareholder of LDV Oil, Inc., Amadeus, Inc., Darnoc, Inc. and Centurion Oil, Inc. Craig Borison was also listed as the president, director and 100% shareholder of Optima Exploration and as a 1% general partner of Olympus Limited Partnership. The other partners of Olympus Limited Partnership were Borison with a 1% limited partnership interest and Joan Borison, Borison's wife, with a 98% limited partnership interest.

notices of lis pendens or in their filing. The Trustees have had adequate opportunity for investigation and discovery with respect to the notices of lis pendens, which, it should be pointed out, are matters of public record.

*The Oklahoma Judgment*

8. The Oklahoma Action was tried from October 20 through November 4, 1993. At the conclusion of the trial, United States District Judge Wayne E. Alley made findings of fact and conclusions of law from the bench (the "Oral Ruling"). Judge Alley specifically found that

"Plaintiffs are entitled to conveyances of the property interests bought with their money. *I find and conclude that their interests are property itself, and not a contractual right to acquire property.* This is so no matter which of the Defendants has nominal title to the property. In any event, *the title held by the defendants, or any of them, is for the use and benefit of the Plaintiffs.* An exhibit we frequently referred to here is Plaintiffs' 427, listing their claims as to property. Now, I find as to items one through seven on that list, and 13 through 28, the Plaintiffs are entitled to conveyance of interest in accordance with the fractional interest stated in the exhibit. Or, if the entry is an unknown interest, a conveyance of their percentage of whatever that interest is." Oral Ruling at 17–18 (emphasis added).

Judge Alley further found that the notices of lis pendens which the 60% Claimants had filed did not violate the defendants' rights. Oral Ruling at 21–22.[6]

9. The Oral Ruling was not reduced to written form, i.e., the Oklahoma Judgment, until June 1994. On June 30, 1994, a Journal Entry of Judgment was entered in the judgment docket of the Oklahoma District Court.[7]

10. In the Oklahoma Judgment the 60% Claimants were awarded the Property in accordance with the Oral Ruling. The Oklahoma Judgment ordered Borison and the Business Debtors to execute assignments to the Property, all of which was detailed in the Oklahoma Judgment, in favor of the 60% Claimants.[8]

11. Neither Borison nor the Business Debtors had executed the required assignments in favor of the 60% Claimants prior to the time their Chapter 7 petitions were filed.

*Commencement of This Adversary Proceeding*

12. On March 31, 1995, the 60% Claimants commenced this adversary proceeding asserting that they were entitled to the Property and requesting that the Trustees be directed to execute assignments of the Property to them as required by the Oklahoma Judgment.[9] The Oklahoma Judgment details precisely which fractional interests were held to be the Property of the 60% Claimants. For the purposes of this motion for summary

---

6. This aspect of the Oral Ruling has particular significance as to the 40% of the oil and gas properties not awarded to the 60% Claimants. In substance, Judge Alley held that the filing of the lis pendens as to that 40% had not been an improper use of the lis pendens statute even though the 60% Claimants ultimately failed to prevail on their claims. See discussion *infra* on the lis pendens statute.

7. Post-petition and on or about October 5, 1994, the 60% Claimants filed a Certificate of Registration of the Oklahoma Judgment with the United States District Court for the Southern District of New York. The Trustees point out that this was a violation of the automatic stay. Since the post-petition registration of the Oklahoma Judgment has no bearing on the rights of the 60% Claimants in this adversary proceeding it can be ignored.

8. The Oklahoma Judgment also provided the 60% Claimants with money judgments against the various defendants of over $4 million. The

Oklahoma Judgment held that all of the defendants' remaining interests in the oil and gas properties would be security for the personal obligations of Borison and the Business Debtors to pay the money judgment. The Oklahoma Judgment found that Borison was the alter ego of each of the other defendants and was therefore personally liable for all judgments entered against the defendants.

9. At the same time as they commenced this adversary proceeding, the 60% Claimants also commenced another adversary proceeding, A.P. No. 95–8851A, against Borison in which they sought to have the money obligations owed to them under the Oklahoma Judgment declared non-dischargeable pursuant to Bankruptcy Code § 523. In addition, they sought to prevent Borison's discharge pursuant to Code § 727. This second adversary proceeding remains pending.

judgment, it is assumed that record title to the Property is held by Borison or one or more of the Business Debtors. There have been allegations made by the 60% Claimants that there were transfers of some of the oil and gas lines comprising the Property after the filing of the notices lis pendens. However this court need only adjudicate the rights to the Property as between the 60% Claimants and the Trustees since there are no other parties to this adversary proceeding.

13. The 60% Claimants filed a motion for summary judgment in this adversary proceeding which the Trustees have opposed. Following oral argument, the court took the motion under advisement.

## SUMMARY OF PARTIES' LEGAL ARGUMENTS

### 60% Claimants' Arguments

The 60% Claimants state that the Oklahoma Judgment, which established that they are the equitable owners of the Property, and the lis pendens filed in 1991 prevent the Trustees from using either Code §§ 544(a)(3) or 547(b) to bring the Property into the bankruptcy estates.

Alternatively, they contend that the Property is the subject of an implied trust and is not part of the bankruptcy estate pursuant to Code § 541(d). They argue that although they had not specifically requested the imposition of a trust, the Oral Ruling in the Oklahoma Action found that a "trust" relationship existed between the parties. They maintain that under Oklahoma law resulting and constructive trusts are not claims which must be pled in a complaint but are remedial in nature, to be imposed by a court to prevent wrongful taking or unlawful holding of property.

### The Trustees' Arguments

The Trustees first address the arguments of the 60% Claimants by stating that the 60% Claimants have failed to establish that the Property is not property of the estate under Code § 541(a)(1) because (1) no assignments of the Property had been made in favor of the 60% Claimants as of the commencement of the cases, and (2) the notices of lis pendens did not transfer title to the Property to the 60% Claimants.

Next, the Trustees argue that under the strong arm powers of Code § 544(a)(3) they can cut off any interest the 60% Claimants have in the Property. The Trustees maintain that under the Oklahoma statute the filing of a notice of lis pendens does not provide constructive notice. The Trustees also argue that the notices of lis pendens effectively terminated upon entry of the Oklahoma Judgment.

The Trustees contend that the 60% Claimants have failed to establish that the Property is subject to an implied trust—either resulting or constructive. They assert that the 60% Claimants have failed to provide facts to support the required intent necessary for a resulting trust. Furthermore, they argue that the 60% Claimants fail to establish a constructive trust because the facts fail to prove either clear and unequivocal evidence of wrongdoing by Borison or the Business Debtors or the existence of traceable funds.

Finally, the Trustees urge that if this court finds that the Oklahoma Judgment transferred the Property to the 60% Claimants, the transfer occurred within 90 days of the filing of the petitions and is voidable as a preference pursuant to Code § 547(b).

## DISCUSSION

### SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56, as made applicable to adversary proceedings by Bankruptcy Rule 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A fact is material only if it affects the result of the proceeding and a fact is in

dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *In re Tikijian,* 76 B.R. 304, 313 (Bankr.S.D.N.Y.1987). The court's function when faced with a motion for summary judgment is to determine whether there exists any genuine issue of material fact to be tried, and not to resolve any factual disputes. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996); *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983); *In re Ross,* 64 B.R. 829, 836 (Bankr.S.D.N.Y. 1986).

In ruling on a motion for summary judgment, the court is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment. *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with affidavits, depositions, or other sworn evidence setting forth specific facts showing that there exists a genuine issue of material fact. *Rule,* 85 F.3d at 1011; *accord* Rule 56(e). The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Instead, the nonmovant must "come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely * * * on the basis of conjecture or surmise." *Trans Sport v. Starter Sportswear,* 964 F.2d 186, 188 (2d Cir.1992) (citation omitted).

The evidence favoring the nonmoving party must be more than merely colorable. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. A mere scintilla of evidence is not enough to create a genuine issue of fact. *See Id.* at 252, 106 S.Ct. 2505. There must be evidence upon which a jury may reasonably rely; and a party may not escape summary judgment on the mere hope that something will turn up at trial. *Id.; Ayers v. Pastime Amusement Company,* 283 F.Supp. 773, 793 (D.S.C.1968);

*In re General American Communications Corporation,* 63 B.R. 534 (Bankr.S.D.N.Y. 1986). Finally, where the nonmoving party bears the burden of proof on an issue at trial, the moving party may simply point to the absence of evidence to support the nonmoving party's case. *National Lumber and Supply, Inc.,* 184 B.R. 74, 79 (9th Cir. BAP 1995); *In re Brazier Forest Products, Inc.,* 921 F.2d 221, 223 (9th Cir.1990).

There are no material disputed facts that prevent resolution of this matter by way of summary judgment. The 60% Claimants made a facially sufficient showing as to the sufficiency of the notices of lis pendens. That shifted the burden to the Trustees of moving forward to offer detailed facts to challenge the showing made by the 60% Claimants. The Trustees fail to supply any factual details that create a dispute which would require resolution by a trier of fact. Thus, the Trustees' denials about the sufficiency of the notices of lis pendens do not rise to the level of creating even a mere scintilla of a factual dispute. None of the other material facts have been contested.

## RIGHTS TO THE PROPERTY

### Property of the Estate

The essence of the Code may be Code § 541 which defines what is and is not property of the estate. Code § 541(a)(1) states that the bankrupt estate is "comprised of * * * all legal or equitable interests of the debtor in property as of the commencement of the case." The scope of this section is broad and brings into the estate both tangible and intangible property.

"The commencement of a case under section 301, 302, or 303 creates an estate. The property comprising the estate is defined in section 541(a). Pursuant to subsection (a)(1), the estate includes all legal or equitable interests of the debtor in property, wherever located or by whomever held, as of the commencement of the case. This provision is subject to the exceptions stated in section 541(b) and (c)(2). However, nothing in section 541 can revest a debtor with property lost prepetition, such as through foreclosure and eviction.

Paragraph (1) is broad. It includes all kinds of property, including both tangible and intangible property, causes of action, and all other forms of property. Paragraph (1) further includes any property recovered by the trustee using the turnover powers conferred by section 542 of the Code, provided the property was merely out of the possession of the debtor, yet remained 'property of the debtor.' The debtor's interest in property also includes 'title' to property, which is considered an interest in property just as a possessory interest or a leasehold interest would be." 5 Collier on Bankruptcy ¶ 541.04 at 541–10 (15th ed.1997).

Since Borison and the Business Debtors held legal title to the Property on the Petition Date, the Property comes within the definition of property of the estate. However, the Trustees can have no greater rights in the Property than Borison and the Business Debtors had on the date the cases were commenced, i.e., bare legal title, unless the Trustees can use one of the avoidance powers provided elsewhere in the Code to obtain the beneficial interest which belongs to the 60% Claimants.

■■■ In general, the property rights of a bankrupt's estate are determined by reference to state law. *See Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136(1979). *See also Sanyo Electric, Inc. v. Howard's Appliance Corp.*, 874 F.2d 88, 93 (2nd Cir.1989); *Esselen Assoc., Inc. v. Crysen/Montenay Energy Co.*, 102 B.R. 25, 28 (S.D.N.Y.1989). Once a bankruptcy court makes a determination concerning whether a debtor has any legal or equitable interest in property based on applicable state law, whether the property will come into the es-

tate is a federal question. *See Sanyo Electric*, 874 F.2d at 93; *Esselen Assoc.*, 102 B.R. at 28.

■■■ The Trustees cannot re-litigate the Oklahoma Judgment in this court. *See Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2nd Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988)(*citing Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 66 (2nd Cir.1986)); *Teltronics Services, Inc. v. LM Ericsson Telecommunications, Inc.*, 642 F.2d 31, 37 (2nd Cir.1981). A judgment rendered against a bankrupt prior to his bankruptcy is conclusive upon the trustee under the doctrine of res judicata. *See Teltronics*, 642 F.2d at 37. It is a binding determination of the issues litigated. *Id.* The Oral Ruling and Oklahoma Judgment plainly declared that the 60% Claimants are the equitable owners of the Property and are entitled to assignments reflecting their legal ownership pursuant to Oklahoma law.[10] *See* Findings 8, 10. Therefore, at the commencement of the bankruptcy cases, Borison and the Business Debtors held merely legal title and not equitable title to the Property.

■■■ The Trustees did not seek to appeal the Oklahoma Judgment and the Oklahoma Judgment is now a binding determination as to the ownership of the Property. A bankruptcy court's equitable powers cannot be invoked to permit it to disregard the preclusive effect of a state court judgment nor are there any equities in this case suggesting this court ought to do so. *See Kelleran*, 825 F.2d at 695. Therefore, without more, pursuant to the Oklahoma Judgment, the estates merely have bare legal title to the Property

10. There is an additional subsection of Code § 541 that speaks to the effect of such a split between equitable and legal title. Code § 541(d) provides that property of the estate does not include:

"Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the

extent of the debtor's legal title to such property, but not to the extent of that the debtor does not hold."

The legislative history of this section indicates that Code § 541(d) was enacted primarily to insure the proper functioning of the secondary mortgage market. As discussed in the next footnote, no general consensus has developed in the cases that have considered the issue outside of the secondary mortgage market fact pattern as to whether Code § 541(d) supersedes a trustee's avoidance powers, including those under Code § 544(a)(3).

and not equitable ownership. The Trustees remain free to urge, as they have, that the enforceability of the Oklahoma Judgment is affected by the strong arm powers of the Code.[11]

*Avoiding Powers Under Code § 544(a)(3)*

Code § 544(a)(3) provides

"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

\*　　\*　　\*　　\*　　\*　　\*

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case whether or not such a purchaser exists."

The Trustees correctly state that Code § 544(a)(3) gives them the avoidance powers as of commencement of the case that a bona fide purchaser of real property from the debtor would have. The Trustees urge that with those powers they can cut-off the 60% Claimants' rights in the Property. It is undisputed that Oklahoma law has a system for the recording of title to real property.[12] It is equally undisputed that the 60% Claimants do not have record title to the Property. Ergo, the Trustees say, we prevail. In response, the 60% Claimants say not so fast: we filed notices of lis pendens in 1991, over three years prior to the time the Chapter 7 cases were filed, and the effect of these notices is to prevent the Trustees from acquiring the status of bona fide purchasers.

Although Code § 544(a)(3) elevates a trustee to the status of a bona fide purchaser even if the debtor had actual knowledge of an adverse interest, it does not clothe a trustee with this protective mantle if there was no way, under the applicable state law, that anyone could attain the status of a bona fide purchaser. "Where there are matters of record giving constructive notice of a competing interest because, for example, of proper filing, a pending divorce proceeding, or an inquiry notice of a prior claim, the trustee is precluded from using the avoiding powers." 5 Collier on Bankruptcy ¶ 544.08, 544–7 (15th ed. 1997). Under Code § 544(a)(3), constructive notice is imputed to a hypothetical purchaser. *See e.g., McCannon v. Marston,* 679 F.2d 13, 16 (3rd Cir. 1982); *In re Minton Group,* 27 B.R. 385, 388 (Bankr.S.D.N.Y.1983).

"As a hypothetical bona fide purchaser, the trustee under this subsection is deemed to have conducted a title search, paid value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case. The trustee can exercise rights as a bona fide purchaser at the time of the commencement of the case regardless of actual knowledge. However, the trustee's right as a bona fide purchaser does not override state recording statutes and permit avoidance of any interest of which a trustee would have had constructive notice under state law. Thus, a trustee generally can avoid an unrecorded transfer of land, but not after having been put on constructive notice or inquiry of a prior claim." 5 Collier on Bankruptcy ¶ 544.08, 544–14 through 544–15 (15th ed.1997).

As will be seen shortly, the effect of the notice of a lis pendens under Oklahoma law is to place the Trustees on actual or con-

---

11. This court finds it unnecessary to resolve any clash between Code §§ 541(d) and 544(a) because this court concludes that the Trustees can not prevail under Code § 544(a)(3). If this were not the case, the court would have to reconcile both sections. A number of courts have written on the subject. *See e.g. In re Howard's Appliance Corp.,* 874 F.2d 88, 94–95 (2d Cir.1989); *In re General Coffee Corp.,* 828 F.2d 699, 705 (11th Cir.1987); *In Matter of Quality Holstein Leasing,* 752 F.2d 1009, 1014 (5th Cir.1985); *Matter of*

*Plunkett,* 89 B.R. 776, 781–84 (Bankr.E.D.Wis. 1988); *In re Cascade Oil Co., Inc.,* 65 B.R. 35, 38–41(Bankr.D.Kan.1986); *In re Green Lantern, Inc.,* 64 B.R. 356 (Bankr.W.D.Pa.1986).

12. Oil and gas interests of the type comprising the Property are considered real property under Oklahoma law and recorded as any other type of real property.

structive notice.[13] This court agrees with the 60% Claimants that their notices of lis pendens defeat the Trustees' Code § 544(a)(3) avoidance powers.

### The Effect of Notice of Lis Pendens under Oklahoma Law

 Oklahoma's lis pendens statute is codified in Title 12 of the Oklahoma Statutes. Section 2004.2 of Title 12 provides

"A. Upon the filing of a petition, the action is pending so as to charge third persons with notice of its pendency. While an action is pending, no third person shall acquire an interest in the subject matter of the suit as against the prevailing party's title, except that:

　1. As to actions in either state or federal court involving real property, such notice shall be effective from and after the time that a notice of pendency of action, identifying the case and the court in which it is pending and giving the legal description of the land affected by the action, is filed of record in the office of the county clerk of the county wherein the land is situated;

\*　　\*　　\*　　\*　　\*　　\*

B. \* \* \* [A]ny interest in real property which is the subject matter of an action pending in any state or federal court, acquired or purported to be acquired subsequent to the filing of a notice of pendency of action as provided in subsection A of this section, or acquired or purported to be acquired prior to but filed or perfected after the filing of such notice of pendency of action, *shall be void as against the prevailing party or parties to such action.*" 12 Okl. St. § 2004.2. (emphasis added).

The essential predicate to the filing of a lis pendens is an action claiming an interest in real property. *See Harvey Estes Construction Co. v. Dry Dock Savings Bank of New York,* 381 F.Supp. 271, 275 (W.D.Okla.1974).[14] *See generally,* Dale L. Astle, "An Analysis of the Evolution of Oklahoma Real Property Law Relating to Lis Pendens and Judgment Liens," 32 Okla. L.Rev. 812 (1979). The doctrine of lis pendens has no application to an action for the recovery of money only. *Flanagan v. Clark,* 156 Okla. 230, 11 P.2d 176, 177 (1932).

 It is apparent that compliance with 12 Okla. St. § 2004.2 provides notice to third parties and prevents a subsequent purchaser from obtaining the status of a bona fide purchaser. *See Hart v. Pharaoh,* 359 P.2d 1074, 1079 (Okl.1961); *Thompson v. General Outdoor Advertising Co.,* 194 Okla. 300, 151 P.2d 379, 384 (Okl.1944); *Stuart v. Coleman,* 78 Okla. 81, 188 P. 1063, 1064 (Okla.1920). Because the notice of lis pendens provides notice to all potential purchas-

---

**13.** Under 28 U.S.C. § 1964, a party in a federal court action concerning real property must comply with the requirements of state law, such as recording requirements, in order to give constructive notice of the federal court action. *See Winkler v. Andrus,* 614 F.2d 707, 714 (10th Cir. 1980).

**14.** In this respect, a notice of lis pendens is fundamentally different than a pre-judgment attachment. The purpose of a pre-judgment attachment is to secure an interest in property, not itself the subject matter of the action, in order to have a fund available from which to satisfy any judgment obtained. Lis pendens is an ancient doctrine recognized under the common law which has been codified in many states. Prejudgment attachment was unknown at common law and is solely a creature of statute. Oklahoma provides by statute for the possibility of a pre-judgment attachment. 12 Okla. St. § 1151 et seq. There are eleven grounds on which attachment may be sought, including that the defendant has absconded with intention to defraud his creditors, that the defendant is about to remove his property, or a part thereof, out of the jurisdiction of the court with the intent to defraud his creditors, and that the defendant has fraudulently contracted the debt, or fraudulently incurred the liability of obligations which are the subject of the suit. 12 Okla. St. § 1151. *See generally Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (prejudgment attachment) and *Bartlett v. Williams,* 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 (1983) and lower court case *Williams v. Bartlett,* 189 Conn. 471, 479, 457 A.2d 290 (Conn.1983) *appeal dismissed,* 464 U.S. 801, 104 S.Ct. 46, 78 L.Ed.2d 67 ("Certainly the deprivation caused by the notice of lis pendens is considerably less severe than a total deprivation of the property interest, where due process mandates a pre-seizure hearing. \* \* \* The degree of deprivation \* \* \* is at all times non-possessory. Indeed, unless the property owner has any intention of alienating or mortgaging the realty, the effect of the lis pendens procedure is de minimis.").

ers of the real property, anyone who deals in the property while it is in litigation does so at his own peril. *See Wilkin et al. v. Shell Oil Co.,* 197 F.2d 42, 49 (10th Cir.1951); *Morford v. Eberly & Meade, Inc.,* 879 P.2d 841, 843 (Okl.App.Div.1994). Oklahoma case law clearly establishes that parties who acquire an interest in the property after a notice of lis pendens is filed are subject to the outcome of the litigation. *See e.g., White v. Wensauer,* 702 P.2d 15, 18 (Okl.1985); *Hart,* 359 P.2d at 1079; *Thompson,* 151 P.2d at 384; *Stuart,* 188 P. at 1064.

The Trustees argue that the notice to third parties provided in 12 Okla. Statute § 2004.2 does not include constructive notice which bars a bona fide purchaser pursuant to Code § 544(a)(3). The court finds no merit in this argument. First, recording systems typically establish constructive notice of properly filed adverse interests for potential purchasers of property. As previously noted, inquiry notice precludes the use of Code § 544(a)(3). Oklahoma case law clearly assumes that the notice provided by a properly filed lis pendens is constructive notice. *See e.g. Morford,* 879 P.2d at 843(noting that the effect of lis pendens is to give constructive notice of all facts to put a purchaser on inquiry); *White,* 702 P.2d at 18(commenting that lis pendens statutes provide a better form of constructive notice because they require filing of a notice not just filing a case as was required by the lis pendens doctrine); *Lett v. West,* 195 Okla. 461, 158 P.2d 1010, 1014 (Okl.1945)(finding that because the lis pendens was not properly filed at the county seat, constructive notice did not exist). A basic premise of the lis pendens doctrine is that once proper notice is filed, whether or not a potential purchaser checks the record, they will be subject to the outcome of the litigation. *See e.g., White,* 702 P.2d at 18; *Hart,* 359 P.2d at 1079; *Thompson,* 151 P.2d at 384; *Stuart,* 188 P. at 1064.

■ If the prevailing party is the person who filed the lis pendens, any transfer by the title holder subsequent to the filing of the lis pendens is invalid. This is because a purchaser pendente lite of property from a party to the action can acquire no greater right in the property than his grantor had, and is bound by the judgment against his grantor. *See Hart,* 359 P.2d at 1079; *Stuart,* 188 P. at 1064. By virtue of 12 Okla. St. § 2004.2 which specifically states that interests acquired after the filing of a lis pendens are void against the prevailing party, the Trustees cannot attain the status of bona fide purchasers and therefore they cannot defeat the rights to the Property of the 60% Claimants as the prevailing party.

## The Notices of Lis Pendens Did Not Cease Upon Entry of the Judgment

■ The Trustees urge the notices of lis pendens terminated when the Oklahoma Judgment was entered. The Trustees fail to offer any statutory or case law which supports their argument. The Trustees' argument would result in the prevailing party losing the protection of the notice of lis pendens at the very moment it succeeded in winning on the merits, effectively nullifying any benefit of the filing of the notice of lis pendens.

Moreover, the argument ignores the language of the statute itself, 12 Okla. St. § 2004.2, which provides that no one can obtain superior title while "an action is pending." It has been held that an action is pending until a judgment is no longer subject to appeal and any purchaser will be bound by a later reversal of the lower court judgment. *See Wilkin,* 197 F.2d at 49; *Morford,* 879 P.2d at 843; *Hart,* 359 P.2d at 1079; *Stuart,* 188 P. at 1064. The Oklahoma Action was still pending at the time the Chapter 7 petitions were filed. The appeal period had not expired.[15] Nor had the defendants complied with the requirements of the Oklahoma Judgment that required the giving of assignments.

■ The notices of lis pendens would have to remain in effect after the Oklahoma Judgment had been issued in order to have

---

15. Fed.R.App.P. 4(a) specifies that the notice of appeal must be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from. The Oklahoma Judgment was entered on June 30, 1994 and the bankruptcy petitions were filed July 22, 1994.

any meaning. To find otherwise would violate the primary purpose of the lis pendens doctrine which is to ensure that a judgment can be given effect and not thwarted by actions of the title holder during the pendency of the action. *See e.g. Wilkin,* 197 F.2d at 49; *Hart,* 359 P.2d at 1079; *Stuart,* 188 P. at 1064. The doctrine of lis pendens supports the jurisdiction, power or control which the court retains over property involved in an action, pending continuance of such action. *See Wilkin,* 197 F.2d at 49. Neither Borison nor the Business Debtors could have effectively transferred the Property free of the lis pendens after the issuance of the Oklahoma Judgment anymore than they could have before the Oklahoma Judgment was entered. From a practical notice viewpoint, the Trustees' argument is unpersuasive.

*Code § 547*

 The Trustees urge that Code § 547 gives them the right to avoid as a preferential transfer the award of the Property to the 60% Claimants in the Oklahoma Judgment. In this court's view, Code § 547 is totally inapplicable to a determination of the rights *inter sese* of the Trustees and the 60% Claimants to the Property. *Compare, Lewis v. Diethorn,* 893 F.2d 648 (3d Cir. 1990). The essential requirement of Code § 547 is the payment *with property of the debtor* of an antecedent debt with 90 days of the filing of the petition. The Oklahoma Judgement determined the Property was that of the 60% Claimants and not of Borison or the Business Debtors, so that a critical element of Code § 547 is missing. Nor was the determination that the 60% Claimants were owners of the Property a transfer in payment of an antecedent debt. Consideration of Code § 547 will undoubtedly become an issue if and when the court is asked to determine the rights of the 60% Claimants to the remaining 40% of the oil and properties held by Borison and the Business Debtors which the Oklahoma Judgment determined were to be security for the money portion of the Oklahoma Judgment.

*CONCLUSION*

The 60% Claimants are the owners of the Property. The Trustees cannot avoid the 60% Claimants interest under Code § 544(a)(3) because the notices of lis pendens filed in 1991 prevent the Trustees from obtaining the status of hypothetical bona fide purchasers. No preferential transfer under Code § 547 occurred. The 60% Claimants are entitled to have the Trustees execute and deliver assignments of the Property as mandated in the Oklahoma Judgment.

The prevailing party is directed to settle a judgment in accordance with this decision.